Richard L. HUDSON, Plaintiff-Appellee,

v.

H. A. SMITH, Eugene P. Mitchell, Swan
Engineering and Supply, Inc., and Seal-
co, Inc., Defendants-Appellants.

No. 78–1375.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 26, 1979.

Decided March 7, 1980.

Rehearing Denied April 9, 1980.

Paul P. McBride, Tulsa, Okl. (R. Dow
Bonnell, Tulsa, Okl., with him on the brief),
for plaintiff-appellee.

Robert H. Bingham, Shawnee Mission, Kan. (Charles C. McCarter of McCarter & Greenley, St. Louis, Mo., on the brief), for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a breach of contract case with a tortuous history. By our disposition of the controversy, we hope to finally lay the matter to rest. Background facts in some detail may put the dispute in focus.

Parker Seal Company, a division of Parker-Hannifin Corporation, manufactures "O" rings and other industrial seals. Richard Hudson was a resident territorial manager for Parker Seal and was responsible for promoting sales of Parker products through franchises located in his assigned geographical territory, which included Tulsa, Oklahoma. Donald McDowell was Hudson's superior, and he was responsible for the sale of Parker products through franchises located in a larger geographical territory, including the Tulsa, Oklahoma area. Parker Seal at this time had a policy not to grant franchises to a territorial manager in his own territory.[1] Notwithstanding company policy, Hudson and McDowell developed a plan whereby they could become the franchisee for Parker products in the Tulsa area. The first step was to disenfranchise the existing distributorship in Tulsa. Such was accomplished, and the existing Tulsa franchise was terminated.

Swan Engineering & Supply Company, Inc., a Kansas corporation, held a Parker franchise in the Kansas, Missouri and Nebraska area. H. A. Smith was president of Swan Engineering and a long-time friend of McDowell's. The latter initiated conversations with Smith and suggested that Smith, acting through Swan Engineering, make application for a Parker franchise for the Tulsa area. Smith approved this suggestion, and the plan later agreed on by McDowell and Smith was that Swan Engineering would form an Oklahoma corporation, to be known as Sealco, Inc., and that the latter company, Sealco, would obtain the Parker franchise for the Tulsa area. Such franchise was eventually granted Sealco.

The understanding between McDowell and Swan Engineering (Smith) was that each would own 50% of Sealco's stock, with Swan to be engaged in the actual operation of Sealco. McDowell, for the time being, would be a "silent" owner. The agreement between McDowell and Swan Engineering was reduced to writing and a written contract was entered into by McDowell and Swan on July 14, 1971. More will be said later about this contract. It is sufficient at this point to simply note that later on dispute arose between McDowell and Swan Engineering (Smith) over the terms of the contract. McDowell then assigned his interest under the contract to Richard Hudson. Negotiations between Hudson and Swan Engineering (Smith) broke down, and litigation ensued.

Hudson first brought suit in the United States District Court for the Northern District of Oklahoma against Swan Engineering and Smith, its president, for breach of contract. Hudson was a citizen of Oklahoma, and Swan Engineering and Smith were citizens of Kansas. Federal jurisdiction was based on diversity. This action was later dismissed without prejudice. Hudson next brought a suit, based on the same breach of contract, against Swan Engineering and Smith in a state court of Oklahoma. A second claim was made in the state court proceeding against Sealco, Inc., an Oklahoma corporation, seeking dissolution of Sealco under Oklahoma statutes which provide for dissolution of corporations when there is a deadlock in ownership.

By way of response to the Oklahoma state proceeding, Swan and Smith filed a petition to remove the state proceeding to the United States District Court for the

---

1. This was a policy only, and not an unvarying rule, and exceptions to the policy had in the past been granted.

Northern District of Oklahoma. The removal petition was granted. Hudson then filed a motion to remand to the state court. Swan and Smith vigorously resisted the request to remand the entire case to the state court. The United States District Court for the Northern District of Oklahoma, acting pursuant to 28 U.S.C. § 1441, remanded to the state court Hudson's claim for dissolution of Sealco, but retained in federal court Hudson's breach of contract claim against Swan and Smith.[2] As previously mentioned, there was complete diversity in Hudson's breach of contract claim against Swan and Smith. Indeed, the identical claim had been filed previously in federal court, and later dismissed without prejudice, but without any challenge to federal jurisdiction.

Trial of Hudson's breach of contract claim against Swan and Smith was to a jury, and resulted in a verdict in favor of Hudson against both Swan and Smith in the amount of $200,000. Swan and Smith then filed a motion for judgment *non obstante veredicto* and a motion for a new trial. The motion for judgment *non obstante veredicto* was denied. However, the district court ordered that within ten days Hudson remit the sum of $100,000 of the jury's $200,000 verdict, or the motion for new trial would be granted. Hudson's motion for reconsideration of the remittitur order was denied. Hudson then filed notice that he would not agree to remittitur and asked that the case be reset for trial. Faced with this turn of events, the trial court reversed itself by vacating the remittitur order, reinstating the jury's verdict for $200,000, and denying the motion for new trial. Swan and Smith now appeal the $200,000 judgment entered against them.

On appeal four matters are urged as ground for reversal: (1) the United States District Court for the Northern District of Oklahoma did not have jurisdiction to try the breach of contract claim, since the matter was improperly removed from the state court, albeit the case was removed on the petition of the appellants; (2) insufficient evidence to establish a breach of contract by the defendants; (3) insufficient evidence of damages; and (4) inadequate instructions on the measure of damages.

■ The appellants, Swan and Smith, initially contend that the federal court lacked jurisdiction to hear the breach of contract claim and that the entire case should have been remanded to the state court. In this regard the appellants are in a rather awkward position in that they were the ones who caused the case to be removed to the federal court in the first instance, and, on motion for remand, they succeeded in keeping the breach of contract claim in federal court. In this court the appellants, having now suffered an adverse judgment, have changed their position, not to mention counsel,[3] and they now argue that the federal court had no jurisdiction over the breach of contract claim. However, any suggestion that, under the circumstances described, the appellants are estopped from now arguing that there is no federal jurisdiction would appear to be rejected by *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Such is certainly clear from the dissent in *Finn* wherein the three dissenting justices held that one who causes removal of a case from a state court to a federal court, and then loses his case in federal court, is thereafter estopped from having it remanded to state court. See also *Basso v. Utah Power and Light Company*, 495 F.2d 906 (10th Cir. 1974).

In refusing to remand the breach of contract claim against Swan and Smith to the state court, and at the same time remanding to the state court Hudson's action against Sealco, the district court relied on

<hr>

2. We are advised that the dissolution proceeding remanded to the state court has since proceeded on through to conclusion, and that Sealco has now been dissolved.

3. Trial counsel withdrew from the case after trial. On appeal, appellants have been represented by one set of attorneys in the preparation of their brief, and still another attorney at oral argument. With these repeated changes in counsel, it is not surprising that most of the matters raised on appeal are afterthoughts which were never urged to the trial court.

the provisions of 28 U.S.C. § 1441(c), which provides as follows:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Counsel are in substantial accord that the question of whether the district court acted properly, under 28 U.S.C. § 1441(c), in retaining the breach of contract claim against Swan and Smith, and in remanding the claim against Sealco for dissolution, depends in turn on whether the two claims in the complaint constitute separate and independent claims, or, on the contrary, constitute merely separate controversies relating to a single wrong. The district court held that the two claims were separate and independent claims, and we are disinclined to disturb its resolution of the matter.

■ The first claim, as indicated, was a claim by Hudson, a citizen of Oklahoma, against Swan and Smith, neither a citizen of Oklahoma, for breach of contract and resulting damage. It was not a suit for specific performance. The second claim by Hudson, a citizen of Oklahoma, was against Sealco only, a citizen of Oklahoma, seeking Sealco's dissolution under local Oklahoma law relating to deadlocked ownership. Whether Hudson prevailed, or lost, on his breach of contract claim would have no real effect on his claim that Sealco should be dissolved. In other words, whether Hudson won or lost on his breach of contract claim against Swan and Smith, the deadlocked ownership of Sealco would persist. Like the district court, we conclude that the two claims with which we are here concerned are separate and independent claims within the meaning of 21 U.S.C. § 1441(c). See in support of our conclusion such cases as *Gallagher v. Continental Insurance Co.*, 502

F.2d 827, 831 (10th Cir. 1974); *Gray v. New Mexico Military Institute*, 249 F.2d 28, 30 (10th Cir. 1957); *Greenshields v. Warren Petroleum Co.*, 248 F.2d 61, 64 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957). In *Greenshields* we stated the general rule as follows:

It is apparent, in considering the jurisdictional question, that general diversity does not here exist and that valid removal from state to federal court is dependent upon the existence of a "separate and independent claim" which if sued upon alone would be removable. If such exists, apparent from the original pleading, the entire cause is subject to removal.

The second ground urged for reversal is the alleged insufficiency of the evidence to show a breach of contract by Swan Engineering (Smith). At trial, counsel for Swan and Smith made motions for a directed verdict after Hudson's presentation of evidence, and again after all the evidence had been presented. The motions were in very general terms, and both were denied, the trial court being of the view that there was sufficient evidence to take the case to the jury. With this, we agree.

The written contract between McDowell and Swan granted McDowell an option, subject to certain conditions, to purchase all, or a part, of Swan's stock interest in Sealco.[4] A method for computing the book value of the stock was provided for in the contract. The contract also provided that in the event McDowell did not exercise his option to buy out Swan, then Swan had certain option rights which entitled it to buy McDowell's interest in Sealco.

■ It was Hudson's theory of the case that he exercised his option to buy, that any conditions that were not met were waived, and that Swan thereafter refused to surrender its stock interest to Hudson. Further recital of the details of the contractual dispute between Hudson and Swan is unnecessary. It is sufficient to simply observe that our study of the record convinces us that

---

**4.** The written contract between McDowell and Swan provided for assignment, and McDowell's assignment of his interest under the contract to Hudson is not an issue in the case.

the case was properly submitted to the jury. We do not believe that the evidence, viewed in a light most favorable to Hudson, is so patently in favor of Swan and Smith that reasonable persons could not reach differing conclusions therefrom. See *Symons v. Mueller Co.*, 493 F.2d 972 (10th Cir. 1974). Where substantial evidence exists which tends to support the opposing party's theory of recovery, a directed verdict is not appropriate. *Yazzie v. Sullivent*, 561 F.2d 183 (10th Cir. 1977).

■■■ The jury awarded Hudson the sum of $200,000 as damages. On appeal, complaint is made that the evidence is insufficient to support that amount. We disagree. The testimony regarding the amount of damages came, in the main, from Hudson himself, and from an expert witness, Dr. Rubottom, a chartered Financial Analyst. No objection was made to the competence of Dr. Rubottom to testify as an expert and give opinions. The evidence in our view is sufficient to support the award of the jury. A jury's verdict regarding the amount of damages should be upheld unless it is clearly erroneous, or there is no evidence to support it. *Colorado Coal Furnace Distributors, Inc. v. Prill Manufacturing Co.*, 605 F.2d 499 (10th Cir. 1979). It is noted that we are not here concerned with just the book value of Sealco. Had Hudson been able to exercise his option, he could have acquired complete ownership of Sealco. The evidence was that at one point in time Sealco was a going and prosperous business venture. The loss occasioned by Swan's breach was Hudson's inability to acquire complete ownership of a profitable business. The jury's award was within the bounds of the evidence.

■■■ The fourth ground urged for reversal is the alleged failure of the trial court to fully instruct the jury on Oklahoma law regarding measure of damages. Trial counsel did not object to the court's instructions on measure of damages, nor did he tender additional instructions bearing on the matter. We deem the instructions given to be adequate, and any possible omission does not amount to plain error. See *Pool v.*

*Leone*, 374 F.2d 961 (10th Cir.), *cert. denied*, 389 U.S. 943, 88 S.Ct. 309, 19 L.Ed.2d 300 (1967).

Judgment affirmed.