**NEW ENGLAND CONCRETE PIPE CORPORATION, Plaintiff-Appellant,**

v.

**D/C SYSTEMS OF NEW ENGLAND, INC., et al., Defendants-Appellees.**

Nos. 80–1682, 80–1683.

United States Court of Appeals, First Circuit.

Argued May 5, 1981.

Decided Sept. 11, 1981.

Arnold P. Messing, Boston, Mass., with whom Margaret H. Marshall, Peter A. Zheutlin and Csaplar & Bok, Boston, Mass., were on brief, for Massachusetts Housing Finance Agency.

Terrance J. Hamilton, Boston, Mass., with whom David M. Roseman and Chaplin, Casner & Edwards, Boston, Mass., were on brief, for New England Concrete Pipe Corp.

John M. Reed, Boston, Mass., with whom Philip M. Cronin and Withington, Cross, Park & Groden, Boston, Mass., were on brief, for Dwight Building Co. and Westinghouse Elec. Corp.

Loring A. Cook, III, Boston, Mass., with whom Roche, Carens & DeCiacomo, Boston, Mass., was on brief, for Sydney and Winn, etc.

Before BOWNES and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

BOWNES, Circuit Judge.

This case presents cross-appeals from the district court's final resolution of a dispute over payment on a sub-subcontract for work performed by the plaintiff as part of the construction of Mystic Valley Towers, a private housing project located in Medford, Massachusetts. Because we conclude that the district court lacked subject matter jurisdiction, we vacate the judgment.

In February, 1974, Mystic Valley Towers Associates (the Owners), a limited partnership managed by its general partners, Stanley Sydney and Arthur Winn, entered into an agreement with the Massachusetts Housing Finance Agency (MHFA), in which MHFA agreed to finance the construction of the Mystic Valley Towers project. At the same time, the Owners contracted with Dwight Construction Company (Dwight) for Dwight to act as the general contractor on the project. Dwight in turn executed an agreement with D/C Systems of New England, Inc. (D/C Systems) for the latter to serve as the prime subcontractor.

None of these contracts were executed until Dwight had furnished a bond to ensure the payment of labor and materialmen. Under one section of MHFA's enabling statute, Mass.Gen.Laws Ann. ch. 23A App., § 1–5,[1] MHFA, as mortgagee, was obligated to require that the sponsor of the project, in this case the Owners, obtain such a bond or "an equivalent escrow arrangement." The pending construction loan agreement between the MHFA and the Owners provided that the Owners would require the general contractor, Dwight, to furnish the bond. Dwight proposed, in lieu of a bond from a licensed commercial surety, to obtain a "Bond and Letter of Guarantee" from Westinghouse Electric Corporation, which owned Dwight through a subsidiary. Unwilling to absorb the additional cost of a commercial bond, the Owners concurred in this proposal. After some negotiation, MHFA finally accepted Westinghouse's guarantee as satisfying the statutory requirement and the contracts were executed.

---

* Of the District of Massachusetts, sitting by designation.

1. Mass.Gen.Laws Ann. ch. 23A App., § 1–5, provides in pertinent part:

On all construction loans for the construction of eleven or more dwelling units the MHFA shall require ... a bond furnished by the sponsor or an equivalent escrow arrangement with the sponsor and supervised by the MHFA to assure payment out of the construction loan funds for all labor and materials for which claimants would have been able to claim a mechanic's lien if the claimants had complied with the provisions of chapter two hundred and fifty-four.

About one month later D/C Systems subsubcontracted with New England Concrete Pipe Corporation (New England) for the provision of prefabricated concrete floor members. As work progressed on the project a dispute arose over the quality of the floor members produced by New England. Dissatisfied with New England's product, D/C Systems ultimately refused to make the final payment due under the subsubcontract. New England then demanded payment from Dwight, Westinghouse, the Owners and MHFA, none of whom were willing to accept responsibility for the amount claimed. In March, 1975, New England brought suit in the Superior Court of Massachusetts to recover the outstanding balance allegedly due on the sub-subcontract, naming as defendants D/C Systems, Dwight, Westinghouse, the Owners and MHFA.

On April 7, 1975, Westinghouse and Dwight removed the action to the United States District Court for the District of Massachusetts. None of the parties, including New England, objected. Over the course of the preliminary proceedings the district court dismissed nine of the twelve counts in New England's amended complaint. One of the issues decided before the trial was that the guarantee provided by Westinghouse was not a bond under Massachusetts law. With respect to two of the remaining three counts, the court entered judgment by default against D/C Systems, which in the interim had been declared bankrupt. The case finally went to trial on the one remaining count of New England's complaint, several cross-claims filed by MHFA against the Owners, Dwight and Westinghouse and two cross-claims brought by the Onwers against Dwight and Westinghouse. Finding that MHFA had negligently accepted Westinghouse's "Bond and Letter of Guarantee" as sufficient security for Dwight's payment obligations, in violation of its duty under ch. 23A App., § 1–5, the district court entered judgment against

MHFA on New England's claim and dismissed all of the cross-claims. MHFA appeals this decision, 495 F.Supp. 1334, and New England appeals the dismissal of its claims against the other defendants.

At oral argument we questioned whether the case had properly been removed from the state court, although none of the parties had raised the issue, either below or on appeal.[2] With the benefit of supplementary briefs from the parties, we address this question of our jurisdiction.

As the district court recognized, no basis existed for original federal subject matter jurisdiction over this action. The dispute does not implicate any question of federal law and the diversity of citizenship between the plaintiff and the defendants is far from complete. *See* 28 U.S.C. §§ 1331(a) and 1332(a). With the exception of Westinghouse and Dwight, all of the parties share Massachusetts citizenship: Westinghouse is a Pennsylvania corporation with its principal place of business in that state and Dwight is a Connecticut corporation with its principal place of business in Hamden, Connecticut. But the lack of complete diversity, though it precluded original jurisdiction, did not necessarily foreclose the diverse defendants, Westinghouse and Dwight, from removing the action to federal court. If either of the claims asserted by New England against Dwight and Westinghouse is "separate and independent" of the claims leveled against the other defendants, as the district court decided, the entire action was removable pursuant to 28 U.S.C. § 1441(c). We turn then to ascertain what constitutes a separate and independent claim under § 1441(c) and whether either of New England's claims against Westinghouse and Dwight, in relation to its other claims, satisfies that description.

Section 2 of the Judiciary Act of 1875 (as amended), the precursor of § 1441(c), provided that

---

2. Presiding over the pretrial motions, District Judge Skinner also raised this question *sua sponte*. After reviewing the memoranda submitted by the parties at his request, he concluded that the case had been properly removed. District Judge Garrity presided at the trial and entered the final judgment.

when in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court. . . .

28 U.S.C. § 71 (1940 ed.). With the "separable" controversy as their lodestar, the courts construed § 2 as implicitly dividing suits into three categories. If the suit not otherwise within original diversity jurisdiction included a separable controversy, that is, one which might have been brought alone as a separate suit within diversity jurisdiction, then the entire suit could be removed. If a suit that was not within original diversity jurisdiction involved only nonseparable controversies, or only one controversy, it could not be removed. Finally, if a suit contained a separate, not merely separable, controversy, the courts deemed the separate controversy to be a distinct suit and permitted its removal alone, leaving the balance of the original suit in the state court.[3]

However sound in theory this tripartite scheme may have seemed,[4] in practice it failed. See Reviser's Note, 28 U.S.C. § 1441. "Nearly three-quarters of a century of interpretation could not give definitive meaning, for all imaginable kinds of multi-party litigation, to [these] pigeon-holes. . . ." Cohen, supra note 3, at 5. In particular, the courts were unable to divine from the distinction between separate and separable controversies a practicable standard that could produce consistent results. Id. at 6.

To avoid the interpretative difficulties engendered by § 2, Congress in 1948 adopted § 1441(c), which provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Although § 1441(c) replaced the separable controversy with a more restrictive standard, "a separate and independent claim or cause of action," it retained § 2's allowance for removal of the entire case. Thus, "section 1441(c) takes the unique approach of authorizing federal jurisdiction of an entire complex litigation not within original federal jurisdiction only where the connection between parts of the litigation is most tenuous." Cohen, supra note 3, at 7–8. The district court now has the authority, however, to remand those facets of the case which would not be within the court's original jurisdiction. And, unlike § 2, which defined the separable controversy in terms of diversity jurisdiction alone, under § 1441(c) the requisite separate and independent claim may be premised on either diversity or federal question jurisdiction.

In American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the Supreme Court rendered what remains the most important, though far from comprehensive, interpretation of § 1441(c).

---

3. Our brief discussion of § 2 relies on the following sources: J. Moore & J. Wicker, 1A Moore's Federal Practice, ¶ 0.162[1]–0.163[2]; C. Wright, A. Miller & E. Cooper, 14 Federal Practice and Procedure, § 3724; Cohen, *Problems in the Removal of a "Separate and Independent Claim or Cause of Action,"* 46 Minn.L. Rev. 1 (1961).

4. The structure can be rationally explained. Where the controversies in a single lawsuit were very closely related, the policy of Congress in restricting the right of removal to nonresident defendants, and the policy implicit in *Strawbridge v. Curtiss* [7 U.S.

(Cranch) 267, 2 L.Ed. 435] of limiting federal jurisdiction to cases of complete diversity, should combine to leave the lawsuit in a state court. Where the controversies are less related, a joinder of nonremovable with removable controversies should not destroy the right of removal, yet the controversies are sufficiently related to require a single trial in a single tribunal. Where the controversies are extremely unrelated, single trial in a single tribunal no longer is compelled even if removal of a removable separate controversy should not be defeated by joinder.

Cohen, supra note 3, at 4. (footnote omitted).

Finn, a citizen of Texas, brought suit in a Texas court to obtain compensation for property lost as the result of a fire. As defendants, she named two out-of-state insurance companies and their local agent, Reiss. In her complaint Finn alleged that the three defendants were jointly and severally liable for her loss. She claimed that either she held a valid policy for fire loss from one of the insurers or alternatively that all three defendants were liable for the agent's negligent failure to secure insurance on her behalf. Both of the insurers removed the case to federal court pursuant to § 1441(c). Following a trial the district court entered judgment against one insurer, American Fire & Casualty Co. The insurer then reversed course, arguing on appeal that the case had been improperly removed from the state court. The court of appeals rejected this contention but the Supreme Court reversed, agreeing with the insurer.

According to the Court in *Finn*, Congress meant to accomplish two objectives with the introduction of § 1441(c)—to simplify this corner of the district courts' removal jurisdiction and to "limit removal from state courts." [5] 341 U.S. at 9–10, 71 S.Ct. at 537–538. Mindful of these objectives, the Court then turned its attention to the meaning of "a separate and independent claim or cause of action." Recognizing "that the phrase 'cause of action' has many meanings," the Court nevertheless set forth what it characterized as "an accepted description." *Id.* at 12, 71 S.Ct. at 539.

"Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the

plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show."

*Id.* at 13, 71 S.Ct. at 540, *quoting Baltimore S. S. Co. v. Phillips*, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927).

By itself, this principle fails to adequately explain the conclusion reached by the Court in *Finn*. If a cause of action consists "of the unlawful violation of a right which the facts show," it could very reasonably be argued that the "right" asserted by Finn under an insurance policy is distinct from her "right" to be compensated for Reiss' negligence. So viewed, her complaint stated two causes of action. But the first paragraph of the Court's "accepted description," with its emphasis on the "wrongful invasion of a single primary right," as applied to Finn's complaint at least suggests that it stated only one cause of action. All this shows is that the terms "right" and "cause of action," standing alone, have a chameleon quality ill-suited to achieve the simplification sought by Congress in adopting § 1441(c).

Some progress towards simplification can be found in the Court's recognition that the criterion to determine the applicability of § 1441(c) is not whether the case consists of more than one cause of action but whether it includes a "separate and independent" cause of action. These adjectives underscore a "congressional intention to require more complete disassociation" than was required for controversies to be separable. *Finn* 341 U.S. at 12, 71 S.Ct. at 539. Without conclusively defining a "cause of action," a "separate and independent claim or

---

**5.** In identifying the second purpose, the Court cited as authority the Reviser's Note, which states:

Subsection (c) permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of United States District Courts. In this respect it will somewhat decrease the volume of Federal litigation.

It is not clear from the Note whether the limitation on removal was a legislative objective or only an anticipated consequence. In either case, the Court's construction of the congressional purpose guides our decision.

cause of action" can be accorded a more practicable meaning, faithful to the congressional purpose, by shifting the focus, as did the Court, from the abstractions of "right" and "cause of action" to the harm allegedly suffered by the plaintiff. As summarized by the Court, "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14,[6] 71 S.Ct. at 540.

Admittedly, "wrong" could be used to mean no more than the obverse of "right," leading us back to the elusive abstractions that comprise the Court's definition of a cause of action. But the Court identified the wrong at issue in *Finn* in concrete terms, not as an "unlawful violation of a [particular] right," but as the "failure to pay compensation for the loss on the property." *Id.* at 14, 71 S.Ct. at 540. Finn had advanced her demand for compensation on two fronts, one based on a contract for insurance, one premised on the alleged negligence of the insurers' agent. Though these two theories of recovery were distinct, they both derived from a single loss suffered by the plaintiff and thus were deemed by the Court not separate and independent of each other. Thus, what finally governed the Court's decision was the singularity of the harm the plaintiff sought to remedy, not the several reasons she gave to show her legal entitlement to that remedy.[7]

■ Turning to the allegations in New England's original complaint,[8] we find that New England's action falls squarely within the holding of *Finn*. The complaint essentially sets forth five alternative "claims" for the remaining payment allegedly due for New England's alleged performance of its obligations under the sub-subcontract:

(a) a claim against D/C Systems for an alleged breach of the sub-subcontract;

(b) a claim against MHFA and the Owners, jointly and severally, for violation of a duty allegedly imposed by the construction loan agreement to obtain an adequate bond;

(c) another claim against MHFA and the Owners, jointly and severally, for the alleged violation of a duty imposed by Mass.Gen.Laws Ann. ch. 23A App., § 1–5, to obtain a bond;

(d) a claim against Dwight for the alleged violation of a duty imposed by the construction loan agreement and the general contract to furnish a bond;

(e) a claim against Westinghouse as the guarantor of Dwight's payment obligations under the general contract.

Regardless of the number of theories of recovery, or "claims," asserted in New England's complaint, at bottom it demands compensation for a single wrong—a failure to pay for work performed pursuant to the sub-subcontract. And, "where there is a single wrong to plaintiff ... arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Finn* at 14, 71 S.Ct. at 540.

To the extent the cases relied upon by the parties support a contrary result, we con-

---

**6.** Phrased differently, "separate and independent claims are *not* presented if recovery upon one *would* preclude enforcement of the other[.]" P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1214 (2d ed. 1973); *see, e. g., Knight v. Chrysler Corp.*, 134 F.Supp. 598, 601 (D.N.J.1955).

**7.** As examples of cases following this approach in which removal was not permitted, *see Union Planters Nat'l Bank of Memphis v. CBS, Inc.*, 557 F.2d 84 (6th Cir. 1977); *Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1977); *Morris v. Vitek*, 412 F.2d 1174 (9th Cir. 1969); *Charles Dowd Box Co. v. Fireman's Fund Insurance Co.*, 303 F.2d 57 (1st Cir. 1952); *Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*, 484 F.Supp. 814 (E.D.Pa.1980); *Irving Trust Co. v. Century Export & Import*, 464 F.Supp. 1232 (S.D.N.Y.1979). Removal was allowed in *Hudson v. Smith*, 618 F.2d 642 (10th Cir. 1980), and *Raleigh-Durham Airport Authority v. Delta Air Lines*, 429 F.Supp. 1069 (D.N.C.1976).

**8.** The plaintiff's pleadings at the time the petition for removal was filed control the definition of the claims at issue. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939).

sider them inconsistent with *Finn*.[9] Without undertaking a detailed exegesis of these decisions, a few brief observations are in order. In *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913 (S.D.N.Y. 1965), the court erred, in our opinion, in emphasizing the distinct legal bases of the two claims primarily at issue while disregarding the fact that the claims concerned one wrong—the breach of a single employment contract. *See City of New York v. New York Jets Football Club*, 429 F.Supp. 987, 992 (S.D.N.Y.1977). Similarly, in *Joint School District No. 1 v. Jos. P. Jansen Co.*, 324 F.Supp. 1399 (E.D.Wis.1971), the court gave insufficient weight to the legislative purpose to limit removal under § 1441(c), falling into the trap of equating "wrong," as used in *Finn*, with the violation of each particular right asserted by the plaintiff to justify a favorable judgment. *Cf. Thornton v. Allstate Ins. Co.*, 492 F.Supp. 645 (E.D. Mich.1980) (same error). Although the district court in *Jos. P. Jansen Co.* relied in part on *Climax Chemical Co. v. C. F. Braun & Co.*, 370 F.2d 616 (10th Cir. 1966), *cert. denied*, 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231 (1967), to permit removal, we think that reliance misplaced and that on its facts *Climax Chemical Co.* fully comports with the restrictive approach to § 1441(c) adopted in *Finn*.

A comparison of the complaints in *Jansen* and *Climax* illustrates how "wrong" should be defined in the § 1441(c) context. The plaintiff in *Climax*, seeking compensation for a newly built but inoperable chemical plant, brought suit against the general contractor and several subcontractors, each of whom had supplied a component of the plant. 370 F.2d at 617. With the exception of one subcontractor, all of the defendants were of different citizenship than the plaintiff. Each subcontractor was alleged to be liable for the supposedly defective component it had supplied and the general contractor was allegedly liable for the failure of the plant as a whole and jointly liable with each of the subcontractors for the supposedly defective components. The court of appeals sustained the removal on the ground that all of the claims against the diverse subcontractors and the general contractor for provision of defective components were entirely unrelated to the claim against the nondiverse subcontractor and the general contractor for provision of a different component, even though all of the components were parts of one plant. *Id.* at 619. The complaint treated each defective component as the only wrong attributable to the subcontractor that supplied it and thus the claims against the subcontractors involved completely different questions of fact and substantially different questions of law.[10] If the plaintiff had charged each subcontractor with liability for the failure of the plant as a whole, the action would not have been removable.

In *Jansen* a school district brought suit because a roof that had recently been installed on one of its schools had proved to be defective. 324 F.Supp. at 1399–1400.

9. Contrary to the parties' contention, the holding of *White v. United States Fidelity and Guaranty Co.*, 356 F.2d 746 (1st Cir. 1966), does not support removal in this case. After the court had realigned the parties in *White*, there was complete diversity of citizenship between the plaintiffs and the defendant. As to the court's alternative holding that removal was proper under § 1441(c), we note that the claim of the original plaintiff, White, against the defendant insurer would be equivalent to a suit by Dwight against Westinghouse which, we agree, would be separate and independent of New England's claim against Dwight. But that configuration of claims is not at issue here.

10. One court criticized the *Climax* decision because "[w]ere a single diverse subcontractor to enjoy an absolute right of removal, as *Climax* apparently holds, the federal dockets would be glutted by such actions. In enacting § 1441(c), Congress could have intended no such result." *Pacific Far East Line, Inc. v. Ogden Corp.*, 425 F.Supp. 1239, 1248 (N.D.Ca.1977). What the court neglected to recognize is that the district courts have the discretion to remand those parts of the suit of which they would not have had original jurisdiction. If the claims in an action are sufficiently disconnected to allow removal under § 1441(c) there should be less reason to retain the entire action for reasons of efficiency, thus warranting a more liberal use of the remand power to return state law claims between citizens of the same state to that state's courts.

The defendants, a local installer and an out-of-state supplier of roofing materials, were alleged to be liable for the faulty roof. Although the court acknowledged that the plaintiff arguably "had suffered only one wrong (damage to the roof)," *id.* at 1401, the court concluded that two wrongs had been alleged—a failure to properly install and a failure to supply nondefective materials. Essentially, the court treated the averred violations of two separate contractual obligations as two distinct wrongs. But the separate acts identified by the court as the two wrongs were apparently characterized in the complaint as but reasons for the occurrence of the single wrong with which the plaintiff was concerned—a faulty roof. Unlike the claims at issue in *Climax*, the claims in *Jansen* alleged that each of the defendants were fully liable for the one wrong.[11] And that should have precluded removal under § 1441(c).[12] *See Board of Governors of Western Illinois University v. Weber, Griffith & Mellican*, 426 F.Supp. 483 (S.D.Ill.1977).

■ At least one of the parties urges us to disregard the lack of jurisdiction at this late stage in the course of their litigation. *See* 1 Moore's Federal Practice ¶ 0.60[4] at 631. Except in extraordinary circumstances, however, this is not a matter subject to discretion.

The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties. To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them.

*American Fire & Casualty Co. v. Finn*, 341 U.S. at 17–18 (footnote omitted); *accord, Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

We vacate the judgment of the district court with instructions to remand the entire case to the state court.

*Vacated and remanded.*

---

11. Although the court's opinion in *Jansen* is somewhat ambiguous, our characterization of the plaintiff's action may be fairly implied from the type of wrong at issue and the fact that the plaintiff demanded the same amount in damages from both defendants. The nature of the relief requested by the plaintiff should not control a court's determination of whether only a single wrong is alleged, but it should certainly be considered. *But see Joint School District No. 1 v. Jos. P. Jansen Co.*, 324 F.Supp. 1399, 1401 (E.D.Wis.1971).

12. Although the "single wrong" rule resolves the removal question presented by this case, as it did in *Finn*, it should not be perceived as articulating an exhaustive test for applying § 1441(c). Even though an action implicates more than one wrong it may nevertheless fail to contain any separate and independent claims. What should determine the applicability of § 1441(c), however many wrongs may comprise a particular suit, is whether those wrongs arise from an interlocked series of transactions, that is, whether they substantially derive from the same facts. *Compare, e. g., Schwartz v. Merrill Lynch, Pierce, Fenner & Smith*, 424 F.Supp. 672 (N.D.Ca.1976), *with Stokes v. Merrill Lynch, Pierce, Fenner & Smith*, 523 F.2d 433 (6th Cir. 1975), *and Lowenschuss v. Gulf & Western Industries, Inc.*, 419 F.Supp. 342 (E.D.Pa.1976) (suits by multiple plaintiffs to remedy similar wrongs resulting from a single action of the one defendant). If they do, the congressional objective to require "more complete disassociation," thus limiting the availability of removal, would not be served by accepting jurisdiction of the action.