Scott DORFMAN, a minor, by his parents and natural guardians, Jerry A. DORFMAN and Abbe L. Dorfman, and Jerry A. Dorfman and Abbe L. Dorfman, in their own right

v.

E.R. SQUIBB & SONS, INC.

Civ. A. No. 85–4316.

United States District Court,
E.D. Pennsylvania.

Aug. 21, 1985.

---

Stephen M. Feldman, Philadelphia, Pa., for plaintiffs.

David J. Griffith, Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for defendants.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action originally was filed in the Court of Common Pleas of Philadelphia County on May 11, 1983. The plaintiffs are Scott Dorfman, a minor child, and his parents, Jerry and Abbe Dorfman. The complaint alleges that Scott Dorfman was born prematurely on August 9, 1981, and that the premature birth caused brain damage, mental retardation, and cerebral palsy. The defendants named in the complaint are E.R. Squibb and Sons, Inc. (Squibb) and four obstetricians named individually and as members of their professional corporation (hereinafter referred to collectively as "the obstetricians"). The complaint alleges that in 1955 plaintiff Abbe Dorfman's mother, Elenor Gross, ingested the drug Diethylstibestrol (D.E.S.) while pregnant with Abbe; that Abbe was exposed to D.E.S. *in utero* ; and that as a result of that exposure Abbe developed certain abnormalities in her reproductive system which created a substantial danger of premature delivery in the event Abbe became pregnant. The first cause of action (on behalf of Scott Dorfman) alleges that the obstetrician defendants were negligent in their care of Abbe Dorfman during her pregnancy in 1981 in that they knew or should have known that Abbe's mother had ingested D.E.S. while pregnant with Abbe; that they failed to determine the nature and extent of the abnormalities in the reproductive system of Abbe Dorfman caused by her exposure to D.E.S.; that they failed to properly treat Abbe to prevent premature delivery of her baby; that they failed to advise Abbe with regard to restrictions on her activity during her pregnancy; and that they failed to properly deliver Scott Dorfman. The second and third causes of action are brought by Scott's parents, in their own right, for injuries and damages arising from the obstetricians' alleged negligence with respect to the care of Abbe Dorfman and the delivery of Scott Dorfman in 1981.

The fourth, fifth, and sixth causes of action are brought by Scott Dorfman (and by his parents in their own right) against defendant Squibb, alleging that Squibb is liable (under theories of strict liability and negligence) for the premature birth of Scott Dorfman (and the plaintiffs' resultant injuries and damages) as a result of Squibb's manufacture and distribution of the D.E.S. which was ingested by Abbe Dorfman's mother in 1955.

As noted above, this action was filed in the Court of Common Pleas in 1983. Trial eventually was scheduled for September 30, 1985 before the Honorable Leon Katz. On May 20, 1985, counsel for the defendant obstetricians filed a motion for summary judgment in the Court of Common Pleas grounded upon the plaintiffs' inability to produce any expert evidence with respect to their malpractice claims against the obstetricians. In a letter to the Clerk of the Common Pleas Motion Court dated June 7, 1985, counsel for plaintiffs stated he would not be filing a response to the defendant-obstetricians' motion for summary judgment. In an order dated June 24, 1985, Judge Katz granted the obstetricians' motion for summary judgment and entered judgment in their favor.

On July 24, 1985, defendant Squibb—the sole remaining defendant—filed a petition for removal to this Court, alleging diversity of citizenship between Squibb and the plaintiffs, and alleging that the petition was timely in that it was filed within thirty days after it could "first be ascertained" that the case had "become removable" pursuant to 28 U.S.C. § 1446(b) (i.e., thirty days after judgment was entered in favor of the non-diverse defendant obstetricians). The plaintiffs have filed a motion to remand this case to the Court of Common Pleas. The plaintiffs contend that the case was improvidently removed in that, *inter alia,* the petition for removal is deficient in failing to allege the citizenship of the parties at the time of the commencement of the suit, and that the petition is untimely because the claims set forth in the complaint against Squibb are "separate and independent" from the claims set forth in the complaint against the obstetricians (*see* 28 U.S.C. § 1441(c) ), and that therefore Squibb should have filed its removal petition within thirty days after service of the complaint in May of 1983. For the reasons set forth below this Court has determined that this action was improvidently removed, and accordingly the plaintiffs' motion to remand will be granted and this case will be remanded to the Court of Common Pleas of Philadelphia County.

Subsection (b) of 28 U.S.C. § 1446 states as follows:

The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1441(c) provides:

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

■ In the present case the defendant filed its petition for removal on July 24, 1985, alleging jurisdiction on the basis of diversity of citizenship between itself and the plaintiffs. At the outset, the plaintiff

contends that the removal petition is deficient because it fails to allege the citizenship of the parties at the time of the *commencement* of the suit in the state court. The burden is on the defendant to show that diversity of citizenship existed between itself and the plaintiffs at the time of the commencement of the action in the state court and at the time of the filing of the petition for removal. *Kerstetter v. Ohio Casualty Insurance Co.,* 496 F.Supp. 1305, 1307 (E.D.Pa.1980). In this case the petition for removal fails to allege that diversity of citizenship existed between Squibb and the plaintiffs at the time the suit was commenced. However, assuming that diversity did exist between Squibb and the plaintiffs at the time the suit was filed, and assuming (without deciding) that the defect in the removal petition could be cured, the Court nevertheless will remand this action because it has determined that the petition was not timely filed.

As noted above, the plaintiff contends that the cause of action against Squibb was "separate and independent," on the face of the complaint, from the cause of action against the defendant obstetricians; that under 28 U.S.C. § 1441(c) the case was "removable" by Squibb at the time it was filed in the state court; and that because Squibb failed to file its petition for removal within thirty days after service of the complaint, its petition was not timely filed. Thus the issue (with respect to this contention of the plaintiffs) is whether or not the complaint sets forth a "separate and independent claim or cause of action" against Squibb, which would "be removable if sued upon alone," within the meaning of Section 1441(c). If so, the case was "removable" by Squibb at the time the complaint was served, and Squibb's removal petition was not timely filed.

In 1951 the Supreme Court examined the then-recently amended Section 1441(c) and determined that the 1948 change in language from "separable controversy" to the present "separate and independent claim or cause of action" evidenced a Congressional intent to restrict removal. *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 12, 71 S.Ct. 534, 539, 95 L.Ed. 702 (1951). In *Finn,* the plaintiff, a Texan, sued two nonresident insurance companies and their Texas agent, alleging alternative claims for recovery for a fire loss, i.e., that one or the other insurer had issued policies or that the agent was liable for failing to insure plaintiff's property. The non-resident defendants removed the case to federal court pursuant to Section 1441(c). The Supreme Court, in attempting to define the "separate and independent" concept, held that the case had been removed improperly because the claims against the removing defendants were not "separate and independent":

> [W]e conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent cause of action under § 1441(c).

*Finn,* 341 U.S. at 14, 71 S.Ct. at 540 (footnote omitted). The Court noted that the allegations against the non-diverse defendant "involve substantially the same facts and transactions as do the allegations against the [diverse defendants]," and emphasized that "the damage comes from a single incident." *Id.,* 341 U.S. at 16, 71 S.Ct. at 541.

The general effect of the *Finn* decision has been to restrict removal sought under the "separate and independent claim" provision of § 1441(c), particularly where jurisdiction is founded upon diversity of citizenship. *See* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 3724, at 370 (2d ed. 1985); 1A J. Moore & B. Ringle, *Moore's Federal Practice,* ¶ 0.163 [4.–5–1], at 340 (2d ed. 1983); *see also American Mutual Liability Insurance Co. v. Flintkote Co.,* 565 F.Supp. 843, 848 n. 4 (S.D.N.Y.1983) (collecting cases). However, claims against different defendants may be "separate and independent" where they involve "completely different questions of fact and substantially different questions of law." *New England Concrete Pipe v. D/C Systems,* 658 F.2d 867, 873 (1st Cir.1981), cit-

ing *Climax Chemical Co. v. C.F. Braun & Co.*, 370 F.2d 616 (10th Cir.1966), *cert. denied* 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231 (1967). As Professor Moore points out, where

> "two or more defendants act individually in such a manner that each has invaded a separate right of the plaintiff ... the plaintiff has multiple claims against the several defendants individually; and although plaintiff joins defendants in one action ... the claims are separate and independent within the meaning of § 1441(c)."

1A *Moore's Federal Practice, supra,* ¶ 0.163 [4.–5], at 333.

In *Lemke v. St. Margaret Hospital, et al.*, 552 F.Supp. 833 (N.D.Ill.1982), the plaintiff, an Illinois citizen, alleged in a state court action that the defendants—an Illinois school district and high school, an Indiana physician, and an Indiana hospital—caused the injury and death of her son. The son was injured while attending the high school, and died after receiving medical care from the defendant physician and hospital. The non-resident defendants removed the case to federal court. The district court reasoned that a determination as to whether the claims against the defendants were separate and independent should involve consideration of whether a plaintiff is "seeking to vindicate different rights against different defendants" and whether "the causes of action are based upon facts that are spatially and chronologically distinct." *Lemke*, 552 F.Supp. at 840. The court concluded that in her complaint against the school district the plaintiff sought to vindicate the decedent's right to attend school in a safe environment, that the complaint against the physician and hospital for malpractice involved a breach of their duty to render proper medical care, and that since the causes of action involved "different defendants charged with violating different rights," the claims were "separate and independent" under Section 1441(c). 552 F.Supp. at 840–41.

In accordance with the decision in *Lemke* is the holding in *Leinberger v. Webster*, 66 F.R.D. 28, 31 (E.D.N.Y.1975), where the court held that a malpractice claim against a non-resident physician for negligent treatment of injuries sustained in an automobile accident, was "separate and independent" within the meaning of Section 1441(c) from the plaintiff's claim against the (non-diverse) owner and operator of the vehicle which allegedly caused her original injuries.

Two other decisions involving factually similar but distinguishable situations should be noted. In *Luebbe v. Presbyterian Hospital*, 526 F.Supp. 1162 (S.D.N.Y.1981), a defendant surgeon who had been sued for malpractice by the plaintiff filed a third-party complaint against the non-resident manufacturer of a surgical instrument used in the operation at issue, contending that the allegedly defective instrument caused the plaintiff's injuries. The court held that the third-party claim against the manufacturer was not separate and independent from the plaintiff's malpractice action against the surgeon, noting that "detailed evidence about the surgical procedure performed on plaintiff will necessarily lie at the core of both issues." 526 F.Supp. at 1165. Finally, in *Bowerman v. Tomhave*, 414 F.Supp. 7 (E.D.Pa.1975), the court held that a products liability claim against the non-resident manufacturer of an intrauterine device and a malpractice claim against *the physician who inserted the device* were not separate and independent because the claims (set forth in a single count) alleged that the plaintiff's injuries were caused by the manufacturer, or the physician, or both. 414 F.Supp. at 9.

In determining whether the plaintiff has stated separate and independent claims against the defendants, the allegations in the complaint are controlling. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939). In the present case the complaint clearly alleges causes of action against the defendants which are based upon "spatially and chronologically distinct facts" and which seek to "vindicate different rights against different defendants." *Lemke v. St. Mar-*

*garet Hospital, supra*, 552 F.Supp. at 840. The complaint against Squibb alleges that it manufactured and distributed a defective drug in 1955 which was ingested by plaintiff Abbe Dorfman's *mother*, and which was a proximate cause of the injuries sustained by plaintiff Scott Dorfman at birth. The complaint against the defendant obstetricians, on the other hand, alleges that those defendants were negligent in that, given the alleged abnormalities in Abbe Dorfman's reproductive system, they failed to provide reasonable medical care during her pregnancy in 1981. Although, as the defendant points out, the injuries sustained by the plaintiffs as a result of the defendants' alleged conduct are the same, in fact the complaint alleges entirely distinct causes of action against the defendants: the claim against Squibb involves the manufacture and distribution of D.E.S. in 1955, and the claim against the defendant-obstetricians involves the adequacy of the medical care which they rendered during Abbe Dorfman's pregnancy more than *twenty-five years* after the alleged torts committed by defendant Squibb. Clearly the complaint has set forth separate and independent claims against the defendants. In this case, in contrast to the situation presented to the Supreme Court in *American Fire & Casualty Co. v. Finn*, the "damage" may *not* have "come from a single incident," and the allegations against Squibb do *not* "involve substantially the same facts and transactions" as do the allegations against the defendant obstetricians. *See Finn, supra*, 341 U.S. at 16, 71 S.Ct. at 541. Moreover, this is not a case where the facts underlying the products liability claim and the medical malpractice claim are inextricably intertwined in a single incident involving the defendant physician's *use* of the defendant manufacturer's *product*, as in *Bowerman v. Tomhave, supra*, 414 F.Supp. 7 (E.D.Pa.1975).

For all of these reasons this Court has determined that the complaint states a separate and independent cause of action against defendant Squibb within the meaning of 28 U.S.C. § 1441(c). Accordingly, the case was "removable" by defendant Squibb at the time the complaint was served in May of 1983, and Squibb's removal petition, filed in July of 1985, is therefore untimely.

 It is well-settled that the removal statutes are to be construed strictly against removal and in favor of remand. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985). On a motion to remand the burden is upon the defendant to establish that the case was properly removed to the federal court. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660 (7th Cir.1976); *Davis v. Baer*, 599 F.Supp. 776, 779 (E.D.Pa.1984); 1A *Moore's Federal Practice, supra*, ¶ 0.168[4.–1], at 647. For the reasons set forth above this Court has determined that this action was not removed within the thirty day period provided for in 28 U.S.C. § 1446(b). Accordingly, an order will be entered remanding this case to the Court of Common Pleas of Philadelphia County.