H. R. McFADDEN, Plaintiff,

v.

AMOCO OIL COMPANY and John Atchinson, Defendants.

Civ. A. No. 79–1651.

United States District Court,
D. South Carolina,
Columbia Division.

Order Nov. 1, 1979.

On Motion For Summary Judgment
Dec. 20, 1979.

S. Jahue Moore, West Columbia, S. C., for plaintiff.

Douglas McKay, Jr., Columbia, S. C., for Amoco Oil Co.

Edgar W. Dickson, Columbia, S. C., for defendants.

### ORDER

CHAPMAN, District Judge.

This matter is before the Court upon motion of the plaintiff for a preliminary injunction to prevent the defendant Amoco Oil Company from terminating its lease with plaintiff on a service station located at 2900 Rosewood Drive in Columbia, South Carolina. The action is brought pursuant to 15 U.S.C. § 2801 et seq., known as the Petroleum Marketing Practices Act. This Act was passed in June 1978 to protect service station dealers from termination on non-renewal of leases by oil companies. The plaintiff is a franchisee under the

terms of this Act, which gives service station dealers certain rights and prevents oil companies from terminating or failing to renew for various reasons specifically set forth in the Act.

McFadden had operated the Rosewood Amoco Service Station for a number of years and his testimony taken at the hearing on October 8, 1979 indicates that he had built up a successful business of repeat customers and had seven employees. In October or November of 1978 he was advised by his doctor that he had phlebitis in his leg and that he should not be on his feet or standing on concrete for the long number of hours associated with his job. The following month he talked with a representative of defendant Amoco and advised him of his medical problems and that he would be required to give up the business. This representative, a Mr. Fred Black, advised plaintiff that he would try to find someone to buy the station.

On May 2, 1979, plaintiff and defendant Amoco signed a cancellation agreement as required by the terms of the Act. This agreement allowed plaintiff seven days following the execution thereof to change his mind and revoke the agreement, but plaintiff did not do this since he stated he was still hurting.

Subsequent to the execution of the cancellation agreement plaintiff's original doctor died and he sought treatment from another physician who determined that plaintiff did not have phlebitis and put him on certain drugs that relieved the problem in his legs. Thereafter the plaintiff advised the defendant Amoco that he wished to keep his service station, but was advised that Amoco had entered into negotiations with codefendant John Atchinson to take over the Rosewood Amoco Station.

By the present action plaintiff seeks to be relieved of the consequences of the termination agreement of May 2, 1979 upon the ground of mutual mistake of fact, since he contends that he and Amoco were mistaken about the diagnosis of his physical condition and the physician's requirement that plaintiff stop working on cement and standing on his feet for long hours.

Under 15 U.S.C. § 2805(b)(1) the Court is given authority to grant such equitable relief as it finds necessary to remedy the effect of any failure to comply with the requirements of the Act, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

Section 2805(b)(2) provides

Except as provided in paragraph (3), in any action under subsection (a) of this section, the Court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; *and*

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

Since this is a recent statute, this Court has been able to find no decisions interpreting the above provisions. However, the rule on preliminary injunctions is well established in this circuit by the opinion in *Blackwelder Furniture Co. v. Selig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977). *Blackwelder* involves a preliminary injunction under Rule 62(a) of the Federal Rules of Civil Procedure, which is a little different from the language contained in 15 U.S.C. § 2805(b)(2), but which is helpful to the Court since it enumerates some of the same requirements of the Petroleum Marketing Practices Act. *Blackwelder* found that a decision depended upon "flexible interplay" among the following factors:

(1) Petitioner's showing of "fair ground for litigation"; (2) irreparable injury to pe-

titioner without the injunction; (3) potential substantial harm to other interested parties; (4) wherein lies the public interest?

■ Both *Blackwelder* and the Act require that there be serious questions that are "a fair ground for litigation". Herein lies the plaintiff's problem, since he has admitted that he voluntarily executed the termination agreement and now wishes to have it set aside upon the ground of mutual mistake. There is no question that contracts may be avoided upon the ground of mutual mistake of fact, but to do so the mistaken fact must be (1) a material fact; (2) a fact that forms the basis of the contract; and (3) one that animates and controls the conduct of the parties. See 17 Am.Jur.2d, *Contracts*, § 143.

Williston states at page 451 in his work on *Contracts* (3rd Edition 1970):

It is frequently said that a mistake as to a collateral matter has no effect on a contract . . . .. (This) means that where the persons and things to which the contract relates are the very persons and things the parties had in mind, and the transaction is the kind of transaction they had in mind, mistakes as to other facts are unimportant.

■ In the present action the plaintiff signed the agreement because he was convinced that he had a serious condition in his legs which would require him to give up this type of employment. The mistake, if any, was a mistake in diagnosis by plaintiff's original doctor and is a collateral matter to the contract itself. The termination agreement did what the parties intended it to do and that is terminate the lease agreement. The defendant Amoco signed the termination agreement at the request of the plaintiff for the reasons stated by the plaintiff. After hearing the testimony of the plaintiff the Court finds that the claim of mutual mistake of fact is not a "sufficiently serious question going to the merits as to make such questions a fair ground for litigation."

Although plaintiff will be damaged, the record shows that John Atchinson will also be damaged since he has planned to move into the station and that defendant Amoco could well be damaged if it does not allow the co-defendant to lease the station.

The public interest is such that citizens should be able to make contracts with confidence and expect that these contracts would be performed, particularly when Congress has gone out of its way to protect a franchisee with the various safeguards set forth in the Act.

IT IS, THEREFORE, ORDERED that the motion for a preliminary injunction be, and the same is, hereby denied.

AND IT IS SO ORDERED.

## ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court upon defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions are made upon the ground that there is no genuine issue of any material fact, and that defendants are entitled to judgment as a matter of law.

The plaintiff brought this action pursuant to the Petroleum Marketing Practices Act, Pub.L.No.95–297, 92 Stat. 322 (1978), *codified at* 15 U.S.C.A. 2801, *et seq.* (1979 Cum.Supp.). This legislation was enacted in an effort to equalize what Congress found to be a disparity of bargaining power between franchisees and franchisors in the petroleum industry. S.Rep.No.731, 95th Cong. 17, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 873, 875–876. The Act establishes, *inter alia,* minimum federal standards governing termination and non-renewal of franchise relationships for the sale of motor fuels. *Id.* The lease involved in this action is just one of a number of types of agreements covered by the Act's provisions.

Plaintiff previously made motion for a preliminary injunction pursuant to § 105(b)(2) of the Act, 15 U.S.C.A. § 2805(b)(2) (1979 Cum.Supp.). This motion was heard on October 8, 1979, and the plaintiff testified to the events leading up to this

dispute. By Order of this Court, entered November 11, 1979, plaintiff's motion for a preliminary injunction was denied. Many of the same issues are raised by defendants' motion for summary judgment, and reference is hereby made to the earlier Order of this Court.

The material facts are not in dispute, and are here recounted in a light most favorable to the plaintiff. Plaintiff has operated an Amoco Service Station on Rosewood Drive in Columbia, South Carolina for seven years. At the time this dispute arose, plaintiff was leasing the station under a lease executed by plaintiff and defendant Amoco Oil on or about September 7, 1978. In October or November of 1978 McFadden's physician advised him that he had phlebitis, and that he should not be walking or standing on concrete for the long hours that his job required. Plaintiff then discussed his physician's diagnosis with the defendant's representative, Fred Black, informing Mr. Black that he was in pain and that he wanted to give up the service station. Mr. Black advised the plaintiff that he would try to find someone to take over the business. Codefendant John Atchinson is the individual subsequently located by Amoco's representative to lease the station after the McFadden lease terminated. On May 2, 1979, pursuant to plaintiff's earlier conversations with Amoco's representative, McFadden and Amoco's agent executed a cancellation agreement in accordance with the requirements of the Petroleum Marketing Practices Act. 15 U.S.C.A. § 2802(b)(2)(D). (1979 Cum.Supp.) As required by this section, the agreement accorded plaintiff seven days in which to rescind and cancel the agreement to terminate the lease. *Id.* § 2802(b)(2)(D)(iii).

Sometime after the expiration of the seven-day statutory period of recission, plaintiff's doctor died and plaintiff sought treatment from another physician who determined that plaintiff did not have phlebitis. After two weeks of treatment by this doctor the problems in plaintiff's legs cleared up. The plaintiff thereafter informed Amoco that he wished to keep the station, but he was advised that Amoco was already negotiating a lease with codefendant Atchinson.

By the present action, plaintiff seeks to be relieved of the consequences of the termination agreement of May 2, 1979, claiming that the agreement was based on mutual mistake of fact. Plaintiff contends that because he and Amoco were mistaken about the diagnosis of his physical condition and his ability to continue operating the service station, the agreement to terminate the lease should be declared null and void.

There is no question that contracts may be avoided on the ground of mutual mistake of fact, but to do so, the mistaken fact must be (1) a material fact, (2) a fact that forms the basis of the contract, and (3) one that animates and controls the conduct of the parties. *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798 (1876). As Professor Williston has written in his treatise on contracts:

> It is frequently said that mistake as to a collateral matter has no effect upon a contract . . . (T)his means that where the persons and things to which the contract relates are the very persons and things the parties had in mind, and the transaction is the kind of transaction they had in mind, mistakes as to other facts are unimportant.

Williston *Contracts*, at 451 (3d ed. 1970) (citations omitted).

█ The mistaken diagnosis by plaintiff's physician was clearly collateral to the termination agreement, and is thus not the kind of mistaken fact that the law regards as adequate to avoid contractual duties. The termination agreement did what the parties intended to do: terminate the lease agreement. The legal ground of mutual mistake will not support any action by this Court to relieve plaintiff from the consequences of his prior intentional act. He has voluntarily surrendered his right to continue his lease, and does not now have a legal basis to revoke this decision.

The plaintiff's action is an equitable one for recission of a contract. Plaintiff has argued that the equities run in his favor, but this Court disagrees. Plaintiff request-

ed termination of the lease; Amoco complied with his request. Relying on the agreement to terminate, Amoco began negotiations with codefendant Atchinson. Atchinson, in turn, renegotiated his lease with Union 76, so that he would be in a position to take over the Amoco station when the plaintiff vacated. This Court, acting in its capacity as a court of equity, cannot decree recission of a contract if the parties have substantially changed their position in reliance on it. D. Dobbs, *Remedies*, 727 (1973). Both defendants have changed their position in reliance on the termination agreement. Furthermore, if anyone was in a position to insure that the current situation did not arise, it was the plaintiff who could have ascertained the true condition of his health by consulting another physician. In light of these events, to rescind the termination agreement at this late date would work harsh inequities upon blameless parties.

Defendants Amoco Oil and John Atchinson are therefore entitled to judgment as a matter of law. The termination agreement executed by the plaintiff meets the requirements of the Petroleum Marketing Practices Act, and is not void on the ground of mutual mistake. Pursuant to the agreement made by the plaintiff and defendant Amoco, the lease has terminated.

IT IS, THEREFORE, ORDERED in accordance with the foregoing that defendants' motion for summary judgment, pursuant to Rule 56 be, and the same is hereby, granted.

AND IT IS SO ORDERED.