**Leon THOMPSON, Plaintiff-Appellee,**

v.

**KERR–McGEE REFINING CORPORATION, Defendant-Appellant.**

**No. 79–2311.**

United States Court of Appeals, Tenth Circuit.

Argued July 17, 1981.

Decided Sept. 24, 1981.

Rehearing Denied Oct. 26, 1981.

Jeff R. Laird of Laird & Laird, Oklahoma City, Okl., for plaintiff-appellee.

Carolyn G. Hill, Oklahoma City, Okl. (Richard F. Campbell, III, and B. J. Zimmerman, Oklahoma City, Okl., were with her on the brief), for defendant-appellant.

Before DOYLE and LOGAN, Circuit Judges, and TEMPLAR,* District Judge.

TEMPLAR, Senior District Judge.

This case involves the interpretation and application of the Petroleum Marketing Practices Act (the Act), 15 U.S.C. § 2801 et seq. Kerr-McGee appeals from a jury verdict awarding Leon Thompson, the plaintiff below, $18,500 damages for loss of income resulting from the unlawful nonrenewal of his franchise relationship with Kerr-McGee.

As a preliminary matter, we consider some of the circumstances under which a district judge may grant a motion to vacate under Rule 60(b), F.R.Civ.P. We then consider whether the franchisee has a right to a jury trial of causes of action arising under the Act, what the implications should be of a district court's decision not to grant the preliminary injunction provided in the Act, and whether the notice and summary statement provisions require strict compliance. Finally, we determine whether there was sufficient evidence to support a verdict for the franchisee.

## BACKGROUND

Leon Thompson, the plaintiff and appellee, had operated a Kerr-McGee service station in Oklahoma City since 1968 under a combination station lease and motor fuel consignment agreement. In 1976, a suit filed by Thompson and other dealers against Kerr-McGee was settled. As part of that settlement, Thompson received a two-year lease, under which rent payments were based on his sales. This lease, by its terms, would expire on August 31, 1978.

---

* Honorable George Templar, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

In February 1977, Kerr-McGee began offering a new package to its dealers. Instead of their rent being based on their sales, the dealers could choose to pay a flat monthly rent plus their entire electric bill. For its part, Kerr-McGee said that dealers choosing this plan would receive a two-cent per gallon discount on motor fuels. All the dealers in the Oklahoma City district signed the new agreement except Thompson, who, on January 22, 1978, signed a statement that he was electing not to modify his lease.

On July 28, 1978, Thompson received a letter from Kerr-McGee which read in pertinent part:

In the event that you do not indicate your acceptance of the lease and motor fuel consignment by August 15, 1978, this letter is our notice to you that we will not renew your present lease and related agreements which expire August 31, 1978, because of the failure to agree on new terms, as provided in Section 102(b)(3) of the Petroleum Marketing Practices Act.

A letter, hand-delivered on August 23, 1978, gave notice of unconditional nonrenewal. Thompson continued to operate the station, pursuant to a court order, until September 21, 1978.

## STATUTORY SCHEME

15 U.S.C. § 2802(b)(1) provides:

Any franchisor may terminate any franchise (entered into or renewed on or after June 19, 1978) or may fail to renew any franchise relationship, if—

(A) the notification requirements of section 2804 of this title are met; and

(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3).

The notification requirements of Section 2804 [1] provide that the notice shall be in

1. Section 2804 provides:

Notification of termination or nonrenewal of franchise relationship—General requirements applicable to franchisor

(a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

Additional requirements applicable to franchisor

(b)(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section—

(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable; and

(B) in the case of leased marketing premises, such franchisor—

(i) may not establish a new franchise relationship with respect to such premises before the expiration of the 30-day period which begins—

(I) on the date notification was posted or personally delivered, or

(II) if later, on the date on which such termination or nonrenewal takes effect; and

(ii) may, if permitted to do so by the franchise agreement, repossess such premises and, in circumstances under which it would be reasonable to do so, operate such premises through employees or agents.

(2) In the case of any termination or any franchise or any nonrenewal of any franchise relationship pursuant to the provisions of section 2802(b)(2)(E) of this title or section 2803(c)(2) of this title, the franchisor shall—

(A) furnish notification to the franchisee not less than 180 days prior to the date on which such termination or non-renewal takes effect; and

(B) promptly provide a copy of such notification, together with a plan describing the schedule and conditions under which the franchisor will withdraw from the marketing of motor fuel through retail outlets in the relevant geographic area, to the Governor of each State which contains a portion of such area.

Manner and form of notification

(c) Notification under this section—

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

writing, shall be posted by certified mail or personally delivered to the franchisee, and shall contain a statement of intention not to renew the franchise together with the reasons for nonrenewal, the effective date of the nonrenewal, and a summary statement to be prepared by the Secretary of Energy. 15 U.S.C. § 2804(c). The summary statement is to contain a concise summary of the Act and a statement of responsibilities, remedies, and relief available. 15 U.S.C. § 2804(d)(1). The summary statement is to be furnished within five days after its publication in the Federal Register. 15 U.S.C. § 2804(d)(2). The notification must be given no less than ninety days prior to the nonrenewal, except that in cases where notice cannot be reasonably given that much in advance, the notice must be given on the earliest date on which notice is practicable. 15 U.S.C. § 2804(b).

Section 2802 provides that one ground for nonrenewal is the failure of the franchisor and franchisee to agree to changes in or additions to the provisions of the franchise, provided that the changes or additions are made in good faith and in the normal course of business and the purpose of the changes or additions is not to prevent the renewal of the franchise relationship. 15 U.S.C. § 2802(b)(3)(A).[2]

> (B) the date on which such termination or nonrenewal takes effect; and
> (C) the summary statement prepared under subsection (d) of this section.
> Preparation, publication, etc., of statutory summaries
> (d)(1) Not later than 30 days after June 19, 1978, the Secretary of Energy shall prepare and publish in the Federal Register a simple and concise summary of the provisions of this subchapter, including a statement of the respective responsibilities of, and the remedies and relief available to, any franchisor and franchisee under this subchapter.
> (2) In the case of summaries required to be furnished under the provisions of section 2802(b)(2)(D) of this title or subsection (c)(3)(C) of this section before the date of publication of such summary in the Federal Register, such summary may be furnished not later than 5 days after it is so published rather than at the time required under such provisions. Pub.L. 95–297, Title I, § 104, June 19, 1978, 92 Stat. 329.

Section 2805 provides for a civil enforcement mechanism in the district courts. The court has the power to grant equitable relief, including preliminary injunctions, to the franchisee. 15 U.S.C. § 2805(b). The franchisee has the burden of proving the nonrenewal; the franchisor then has the burden of going forward with evidence that the nonrenewal was for a permissible reason and that the notice requirements were satisfied. 15 U.S.C. § 2805(c). If successful, the franchisee shall be awarded actual damages, expenses, and attorney's fees; he may also be awarded exemplary damages. 15 U.S.C. § 2805(d).

## I

Thompson filed his complaint on August 31, 1978. The following day, the action was removed to federal court. On October 10, 1978, Thompson's attorney withdrew, and the court, by minute order, gave Thompson twenty days during which to obtain new counsel. Twenty-four days later, on November 3, Kerr-McGee filed a motion to dismiss for failure to comply with that order. An *ex parte* hearing was held on that same day and the motion was granted.

On December 19, 1978, Thompson filed a motion to vacate under Rule 60. The court granted this motion on the ground of excusable neglect. *See*, Rule 60(b)(1), F.R.Civ.P.[3]

**2.** Section 2802(b)(3)(A) provides:

> (3) For the purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:
> (A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—
> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and
> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

**3.** Rule 60(b) provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discov-

Thompson had taken the file to James Mitchell, another attorney. Mitchell had told Thompson that he was hopeful of negotiating a settlement with Kerr-McGee in which event it would be unnecessary to obtain an attorney of record. On November 6, after negotiations had apparently failed, he informed Thompson that he would be unable to represent him because of other commitments.

Kerr-McGee claims that the trial court should not have granted Thompson's motion to vacate the dismissal for failure to prosecute. It claims that the motion should have been treated as a motion to alter or amend a judgment, under Rule 59(e). Such a motion must be served not later than ten days after the entry of judgment. Alternatively, Kerr-McGee claims that the motion must be filed within a reasonable time and that case law has established a reasonable time as being the time in which notice of appeal must be filed (the thirty-day rule). *See, Gila River Ranch, Inc. v. United States*, 368 F.2d 354 (9th Cir. 1966); *Hoffman v. Celebrezze*, 405 F.2d 833 (8th Cir. 1969).

Whether we would consider this as excusable neglect is not the issue on appeal. This is because a motion to vacate under Rule 60(b) is directed to the discretion of the court entering the judgment, not to the discretion of the Court of Appeals. Our review is limited to determining whether the district court abused its discretion. *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980). Rule 60(b) gives the court a grand reservoir of equitable power to do justice in a particular case. That rule should be liberally construed when substantial justice will thus be served. *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (*en banc*).

The trial judge was furnished with an affidavit describing how the plaintiff had relied on his attorney's statement that negotiations were in progress. The affidavit further related that Thompson had been present during some of the negotiations and had seen Attorney Mitchell acting in his behalf. We believe that the district court showed sound judgment in vacating the dismissal for want of prosecution, especially considering the short period of time, less than five months, during which the case had been on file.

The cases cited by the defendant in support of the thirty-day rule, *Gila River Ranch* and *Hoffman*, both deal essentially with motions to vacate for mistakes of law. A motion to vacate should not serve as a substitute for an appeal; nor should it serve as a means of extending the time in which an appeal may be taken. Construing a reasonable time as being up to one year when the basis for the motion is a mistake of law creates the anomalous situation of a party seeking to correct an error of law in the district court after the time for filing notice of appeal has expired. The thirty-day rule cannot apply to all Rule 60(b) motions because the language of the rule itself contemplates a reasonable time being as long as one year. "The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order or proceeding was entered or taken."

We hold that a reasonable time for filing a motion to vacate for reason of excusable neglect may exceed thirty days and that the district court did not abuse its discretion in granting the motion herein.

## II

Kerr-McGee argues that the district court erred in granting Thompson's demand for a jury trial. Kerr-McGee points to provisions of the Act setting out equitable remedies and determinations to be made by the court. *See,* 15 U.S.C. § 2805(d)(1)(C), 2805(b)(1) and 2805(d)(2). None of these provisions deal with actual damages, the

ered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other conduct of an adverse party; ... The motion shall be made within

a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

remedy which the plaintiff sought and received.

■ If any of the claims in issue are legal rather than equitable, then the right to a jury trial on those claims is not lost and cannot be infringed upon. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *United States v. New Mexico*, 642 F.2d 397 (10th Cir. 1981). So, if any of the plaintiff's claims are legal rather than equitable, then the trial court did not err in granting a jury trial on those claims. Kerr-McGee's statutory citations do not show that the only relief available under the Act is equitable.

The authority for an award of actual damages is found in Section 2805(d)(1)(A).

> If the franchisee prevails in any action under subsection (a) of this section, such franchisee shall be entitled—
>
> (A) Consistent with the Federal Rules of Civil Procedure, to actual damages;
>
> . . .

There is no language in the statute providing for a jury trial, and the legislative history is silent on the matter. *See*, 1978 U.S.Code Cong. & Adm.News, p. 873.

Some courts have granted jury trials in Petroleum Marketing Practices Act cases. *See, e. g., Sexe v. Husky Oil Co.*, 475 F.Supp. 135, 137 (D.Mont.1979). Apparently, the right to a jury trial was not questioned therein.

A similar question faced the Supreme Court in *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). That case presented the question whether either the Civil Rights Act or the Seventh Amendment requires a jury trial upon demand in an action for damages and injunctive relief under 42 U.S.C. § 3612, which authorizes private plaintiffs to bring civil actions to redress violations of the Fair Housing Act. That Act provided that the court might grant as relief a permanent or temporary injunction, a temporary restraining order, or an award of actual and punitive damages.

The court concluded:

> The Seventh Amendment [right to jury trial] does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.
>
> . . . .
>
> When Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be made available if the action involves rights and remedies of the sort typically enforced in an action at law.

*Id.*, at 194–195, 94 S.Ct. at 1008.

■ A suit for money damages is unmistakably an action at law triable to a jury. *Ross v. Bernhard, supra*, 396 U.S. at 533, 90 S.Ct. at 735; *Dairy Queen, Inc. v. Wood, supra*, 396 U.S. at 476, 82 S.Ct. at 899. Congress did not limit the right to trial by jury if the claimant sought actual damages. If Congress had intended to limit the right, it could have drafted a section similar to 15 U.S.C. § 2805(d)(2), which reads:

> The question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by the jury.

Absent the limitation of the above section, which is in derogation of the common law, the issue of exemplary damages also would be triable to a jury. 25 C.J.S. *Damages* § 117, p. 1107.

■ We hold that the franchisee has a right to a jury trial for actual damages, upon demand, on his claim, under the Petroleum Marketing Practices Act.

### III

■ Kerr-McGee claims that the district court erred in denying its motion for summary judgment and its 12(b)(6) motion because the court had already implicitly made the determinations necessary for granting those motions. Kerr-McGee claims this de-

termination was made when the federal court dissolved the temporary restraining order. (Kerr-McGee suggests additional reasons why it should have been awarded summary judgment. We consider those in Part V.)

15 U.S.C. § 2805(b)(2) provides the standard for determining when the court must issue a preliminary injunction or temporary restraining order.

(2) Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

Kerr-McGee accurately states that the first condition, termination and nonrenewal of the franchise, was satisfied and could not have been the basis for the denial of the injunctive relief. Likewise, it is unlikely that the third condition, involving comparisons of relative hardship, was not satisfied. Therefore, the probable reason for dissolving the temporary restraining order was that the franchisee did not demonstrate the existence of "sufficiently serious questions going to the merits to make such questions a fair ground for litigation." If that be true, according to the defendant, its motion for summary judgment should have been granted because there are no material issues of fact and the defendant should have been entitled to judgment as a matter of law. See, Rule 56(c), F.R.Civ.P. The defendant further argues that a 12(b)(6) motion to dismiss should have been granted because the complaint did not set out any claim upon which relief could be granted.

What makes this issue unusual is that the court, which had earlier dissolved the temporary restraining order, later entered a verdict for the franchisee. An examination of almost thirty cases dealing with the Petroleum Marketing Practices Act reveals no cases in which the court awarded damages after it had denied preliminary equitable relief.

We have found nine published cases in which motions for preliminary injunctions were denied. *Cf., Frisard v. Texaco, Inc.,* 460 F.Supp. 1094 (E.D.La.1978); *Saad v. Shell Oil Co.,* 460 F.Supp. 114 (E.D.Mich. 1978); *Malone v. Crown Central Petroleum Corp.,* 474 F.Supp. 306 (D.Md.1979); *Walters v. Chevron U. S. A., Inc.,* 476 F.Supp. 353 (N.D.Ga.1979), *aff'd,* 615 F.2d 1135 (5th Cir. 1980); *Kesselman v. Gulf Oil Corp.,* 479 F.Supp. 800 (E.D.Pa.1979); *Pearman v. Texaco, Inc.,* 480 F.Supp. 767 (W.D.Mo. 1979); *McFadden v. Amoco Oil Co.,* 486 F.Supp. 274 (D.S.C.1979); *Ferriola v. Gulf Oil Co.,* 496 F.Supp. 158 (E.D.Pa.1980), *aff'd,* 649 F.2d 859 (3rd Cir. 1981, unpublished); *Haynes v. Exxon Corp.,* 512 F.Supp. 543 (E.D.Tenn.1981). In these decisions, the denial of a preliminary injunction was never considered sufficient basis for granting summary judgment.

In *Pearman,* the plaintiff was given fifteen days in which to notify the court whether it intended to present additional evidence on its motion for a permanent injunction. The court did not presume that the plaintiff had already presented all the evidence available on the issue. In *McFadden,* summary judgment was later granted, after an extensive discussion of the merits. The court therein did not consider its denial of the motion for a preliminary injunction to be sufficient support for granting summary judgment for the franchisor. In most of these decisions, the court does not reveal what is to happen to the underlying action after it denies the preliminary injunction.

In *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975), we ob-

served that the object of a preliminary injunction is to preserve the status quo pending litigation on the merits. This is quite different from finally determining the cause itself. It was improper for the district court therein to base its denial of the permanent injunction on the earlier denial of the temporary restraining order without providing the plaintiff the opportunity to present its entire case.

We then quote from 7 Moore, *Federal Practice and Procedure,* ¶ 65.04(4) as follows:

> What is required is that the parties be given a full opportunity to present evidence in the case. At a hearing on the application for a temporary injunction it is not necessary to establish to a certainty that the plaintiff is entitled to relief on the merits, but rather that his success is probable. (Footnote omitted.) A plaintiff putting on his case for temporary relief may hold back evidence, or, indeed, his case may not be fully developed.

528 F.2d at 1187.

The plaintiff in *Penn* did not present his full case at the hearing on the preliminary injunction because he had no notice nor notion that the hearing would be transformed into a trial on the merits. If summary judgment had been granted on the basis of the dissolution of a state court's temporary restraining order, in the instant case, the same objection would apply. *See, Valdez v. Applegate,* 616 F.2d 570, 572 (10th Cir. 1980). The plaintiff herein could not have guessed that the dissolution of the temporary restraining order would be transformed into the basis for a dismissal or a grant of summary judgment. If he had, the plaintiff could have presented the evidence which later resulted in a verdict in his favor.

We hold that the district court did not err in denying the defendant's motion for summary judgment and for dismissal under Rule 12(b)(6).

### IV

■ Kerr-McGee argues that the district judge should have ordered a new trial because the damage award was clearly excessive. A verdict regarding the amount of damages should be upheld unless it is clearly erroneous or there is no evidence to support it. *Hudson v. Smith,* 618 F.2d 642, 646 (10th Cir. 1980). When the cause and existence of damages have been established with the requisite certainty, recovery will not be denied because the amount of such damage is difficult of ascertainment. A reasonable basis for computation and the best evidence available under the circumstances is sufficient. *A to Z Rental, Inc. v. Wilson,* 413 F.2d 899, 908 (10th Cir. 1969). *See also, King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147 (10th Cir. 1981).

■ In its verdict, the jury awarded the plaintiff damages of $18,500. The plaintiff had presented evidence that his average income from the operation of his station over the nine-year period 1969–1977 was $249.37 per month. An award of $18,500 would approximate the plaintiff's income for six years. The plaintiff, at the time of the nonrenewal, was 44 years old. It seems reasonable to believe that, absent the nonrenewal complained of, he could have continued to operate his service station for at least six more years and earned at least as much income as the jury's award of damages.

■ A federal judge has broad discretion in granting or refusing to grant a motion for a new trial. His decision will not be reversed absent a gross abuse of discretion. *Holmes v. Wack,* 464 F.2d 86, 89 (10th Cir. 1972). The trial judge did not abuse his discretion. The jury's award was not so excessive as to shock the judicial conscience and raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial. Thus, the jury's determination of damages was properly considered inviolate. *See, Metcalfe v. Atchison, Topeka & Santa Fe Railway Co.,* 491 F.2d 892, 898 (10th Cir. 1974).

### V

The trial court submitted the issues presented by the evidence with appropriate

instructions to the jury, to which no objection was made by the defendant.[4]

Kerr-McGee argues that the court erred in refusing to direct a verdict and in refusing to order judgment n. o. v. in its favor. These motions are judged by the same standard. The question is not whether there is no evidence supporting the party against whom the motion is made, but whether there is evidence upon which the jury could probably find a verdict for that party. The court must view the evidence most favorably to the party opposing the motions and give that party the benefit of all reasonable inferences from the evidence. The underlying philosophy is one of minimizing interference with the jury. *Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir. 1977).

The reviewing court is not at liberty to set aside the jury verdict merely be-

4. The pertinent instructions of the court were these:

For purposes of this case, the Act provides two conditions upon which nonrenewal of a franchise relationship is permitted. These are:

1. If the notification requirements of the Act are met; *and*,

2. If the nonrenewal is based upon a ground described in the Act.

These two conditions will be described in the subsequent instructions.

You are instructed that the Act in question requires that prior to the nonrenewal of any franchise relationship, the franchisor (here, the defendant) furnish notification of such nonrenewal to the franchisee (here, the plaintiff) which:

1. is in writing, and

2. is posted by certified mail or personally delivered to the franchisee, and

3. contains

a) a statement of intention not to renew the franchise relationship, together with the reasons therefor, and

b) the date on which such nonrenewal takes effect, and

c) a summary statement of the provisions of the applicable law, including a statement of the respective responsibilities of, and the remedies and relief available to the franchisor and franchisee.

In this regard, you are instructed that the "summary statement" was not published in the Federal Register until August 30, 1978, and was, accordingly, unavailable to the defendant prior to that date. This situation was contemplated by the Act, which provides that the summary may be furnished not later than five days after it is published rather than at the time of notification.

It is uncontroverted that the summary statement was not furnished by the defendant to the plaintiff within the five-day period. Defendant contends, however, that the plaintiff, having commenced this suit on August 31, 1978, knew or had notice of his rights and remedies and was not prejudiced by defendant's failure to furnish the summary statement.

It is for you the jury to determine, from all the facts and circumstances appearing before you, whether defendant's failure to provide the summary statement in question was reasonable or if such deprived the plaintiff of adequate notification.

You are further instructed that the Act provides that the above-outlined notification shall be given not less than 90 days prior to the date on which the nonrenewal is to take effect. It is undisputed that the defendant did not give this 90-day notice to the plaintiff.

You are told that the Act, which went into effect on June 19, 1978, provides that under circumstances in which it would not be reasonable for the franchisor to furnish notification prior to the 90-day period, then the franchisor shall furnish notification to the franchisee on the earliest date on which furnishing of such notification is reasonably practicable.

What is "reasonable" is to be determined by you upon a consideration of all the facts, circumstances and evidence appearing in this case.

The Petroleum Marketing Practices Act provides that the following is grounds for nonrenewal of a franchise relationship:

(A) The failure of the franchisor (or defendant) and the franchisee (or plaintiff) to agree to changes or additions to the provisions of the franchise, if—

1. such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; *and*

2. such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

In determining whether the defendant has acted in "good faith," you are told that the good faith test within the context of this Act is meant to preclude sham determinations from being used as an artifice for nonrenewal. As such, good faith means honesty in fact in defendant's conduct, without fraud or dishonest purpose.

You are further instructed that in order to find that the determination was made "in the normal course of business," it must be found that the determination was a result of the franchisor's normal decision-making process, as applied equally to those it does business with.

cause the reviewing judges feel that the opposite result seems more reasonable. *Frank v. Bloom*, 634 F.2d 1245, 1254 (10th Cir. 1980). The comments of the district judge that he might have decided in favor of the defendant if he had been the finder of fact are not germane to our decision.

■ The Act provides that after the franchisee has proven that the lease has not been renewed, the franchisor shall have the burden of going forward with evidence to establish that the termination was for a permissible reason under Section 2802(b)(2) or (3) and that the franchisor complied with the notice requirements of Section 2804. 15 U.S.C. § 2805(c). We find no evidence that Kerr-McGee complied with the notice requirements.

The effective date of the Act was June 19, 1978. On July 28, Thompson received a letter from Kerr-McGee that if he did not indicate his acceptance of the lease and motor fuel consignment by August 15, 1978, Kerr-McGee would not renew his present lease. On August 23, 1978, Thompson received a letter giving notice of unconditional nonrenewal. The lease expired on August 31, 1978, thirty-four days after the first notice.

It is obvious from this time sequence that Kerr-McGee did not give the requisite ninety days' notice, nor was notice given as soon as practicable. Kerr-McGee did not give any sort of notice until 39 days after the Act became effective. Furthermore, Kerr-McGee did not furnish a summary statement to Thompson as required by the Act. On August 30, 1978, the summary statement was published in the Federal Register. Thompson should have received it within five days of August 30, 1978.

Those district courts which have considered the issue have concluded that the notice requirement must be strictly followed. *Blankenship v. Atlantic Richfield Co.*, 478 F.Supp. 1016, 1018 (D.Ore.1979), *Davy v. Murphy Oil Co.*, 488 F.Supp. 1013, 1016 (W.D.Mich.1980), *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178, 181 (D.S.C.1980). Compliance with the summary statement requirement is also mandatory. *Scheele v.*

*Mobil Oil Corp.*, 510 F.Supp. 633, 636 (D.Mass.1981). We agree that strict compliance with both is mandatory.

In discussing the Migratory Bird Treaty Act, we have said:

It is a cardinal tenet of statutory construction that statutes are to be construed to effectuate the intent of the enacting body, and that in construing a statute, the court first looks to the language of the statute. Where the language is clear and the purpose appears with reasonable certainty, there is no need to resort to rules of construction to ascertain its meaning.

*United States v. Ray*, 488 F.2d 15, 18 (10th Cir. 1973).

The language is clear that notice shall be given at least ninety days prior to the nonrenewal if practicable. It was not erroneous for the court below to determine that it would have been practicable to give notice much nearer to the effective date of the Act. It stretches credibility to assume that Kerr-McGee was unaware of this statute prior to sending its July 28 notice.

The requirement of furnishing a summary statement involves no judgment by the court as to practicability. The inquiry is simply whether the statement was furnished not later than five days after its publication. 15 U.S.C. § 2804(d)(2). In so providing, Congress considered the plight of franchisors immediately after the Act became effective and determined a practicable deadline for interim notice of the contents of the Act. This court does not have the power to blot out these timing requirements as to notice and summary statement. The equitable powers in Section 2805 relate only to the plaintiff's remedies. If Congress had intended the courts to have the power to cure or waive a notice defect, it would have so provided in Section 2804 which sets out the notice provisions. *See, Blankenship v. Atlantic Richfield Co., supra.*

■ Furthermore, we believe that there is sufficient, credible evidence to support the jury's verdict for Thompson on the basis that the nonrenewal was not for a reason

outlined in Section 2802(b)(3). Kerr-McGee stated that the reason for the nonrenewal was failure to agree on new terms. Thompson claims that the changes or additions were not made in good faith. 15 U.S.C. § 2802(b)(3)(A)(i).

The interrogatories answered by the defendant reveal that Thompson's monthly rent would increase to $650.00. Before the increase, Thompson's rent, which averaged $130.77, was less than all but one station; after the increase, it was higher than half the Kerr-McGee stations in Oklahoma City.

Kerr-McGee listed four numerical factors used in determining the station rent for six sample stations, including Thompson's. The sum of these factors did not total the station rents. Kerr-McGee attempted to explain this by saying that there was an additional factor called an "economic factor" which was not included in its earlier list of factors. Kerr-McGee did not offer to provide the figures from which it calculated the economic factor.

Thompson suggests that one reason Kerr-McGee bargained with him in less than good faith was his earlier law suit against Kerr-McGee. He was also the only dealer in Oklahoma City to refuse the new package leases.

Kerr-McGee presented evidence that it attempted to explain to Thompson that his rent, after deducting a two-cent per gallon wholesale discount, would increase only $54. What Kerr-McGee does not reveal is Thompson's position vis-a-vis the other dealers.

We hold that the statutory provisions as to notice of nonrenewal, including the summary statement, under the Petroleum Marketing Practices Act, are to be strictly complied with and that Kerr-McGee failed to do so. We further hold that the trial judge did not err in refusing to grant Kerr-McGee's motions for directed verdict and for judgment n. o. v. There was substantial evidence that Kerr-McGee's change of the lease terms was not in good faith.

AFFIRMED.