**Mabel PENN et al.,
Plaintiffs-Appellants,**

v.

**SAN JUAN HOSPITAL, INC.,
Defendant-Appellee.**

No. 75–1156.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 12, 1975.

Decided Dec. 31, 1975.

Robert M. Strumor, Shiprock, N. M. (Jeanne F. Franklin, Arlene S. Strumor, Claudeen B. Arthur and Richard W. Hughes, Shiprock, N. M., and Marilyn G. Rose and Joseph Onek, Center for Law and Social Policy, Washington, D. C., of counsel, on the brief), for plaintiffs-appellants.

Richard L. Gerding, Tansey, Rosebrough, Roberts & Gerding, P. C., Farmington, N. M., for defendant-appellee.

Victor R. Ortega, U. S. Atty., J. Stanley Pottinger, Asst. Atty. Gen., and Brian K. Landsberg, Walter W. Barnett, and Jessica Dunsay Silver, Attys., Dept. of Justice, Washington, D. C., amicus curiae.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The action which is before us was filed in the United States District Court for the District of New Mexico alleging violations by defendant-appellee, San Juan Hospital, of the Fifth and Fourteenth Amendments to the Constitution of the United States and violation of 42 U.S.C. Sec. 291 (the Hill-Burton Act), 42 U.S.C. Sections 1981, 1983, 1985, 2000d of the Civil Rights Act of 1964. Also, 26 U.S.C. Sec. 501(c)(3), Internal Revenue Code. In the amended complaint were allegations under Rule 23, Fed.R.Civ.Proc., seeking relief on behalf of "all persons of Navajo Indian descent who live in or near the City of Farmington, New Mexico or frequent that city such as that might be expected to seek emergency care in San Juan Hospital." In addition, the plaintiff Jones sought damages as administratrix of the estate of Mae Neal, but this claim has been severed from the present matter so that we are limited to review of denial of injunction and denial of class action relief.

A hearing held on November 4 and 15, 1974, dealt with whether a preliminary injunction should be granted and also considered whether the cause should proceed as a class action.

Notwithstanding that the hearing was so limited and that the court repeatedly called attention to the fact that only the preliminary injunction was before it and that the cause was to be tried on its merits later, it proceeded to deny not only the preliminary injunction and also the request that the matter proceed as a class action, but in addition in its findings of fact issued December 6, 1974 dismissed the action insofar as it sought permanent injunction, holding that this was without merit and had to be dismissed also.

The San Juan Hospital is located at Farmington, New Mexico.[1] It is a private hospital, but it came into existence pursuant to the Hill-Burton Act so that it thereby assumed whatever duties to the public which are provided in that statute.

The factual basis for the entire controversy is that certain persons of Navajo extraction were allegedly denied emergency medical care at San Juan Hospital solely on account of their being Indians; that they were told that they should go to the Public Health Service Hospital at Shiprock, New Mexico or were sent to the Shiprock Hospital from the San Juan emergency room without their having been examined or having been given adequate care. At least one death is said to have been caused by the treatment complained of and a number were turned away. The allegation is that all of these actions by hospital personnel were racially inspired and were discriminatory, and were thereby in violation of the Hill-Burton Act, of the Civil Rights Act as well as the State and Federal Constitutions.

It is alleged by plaintiff Jones on behalf of a sub-class of indigent Navajos that the hospital refused to give emergency treatment to *indigent* Navajo persons and that this violated a duty of the hospital arising under its tax exempt status conferred by the Internal Revenue Code.

At the two-day hearing which was preliminary in its nature, the court heard six witnesses for plaintiffs and received four additional affidavits which dealt with the size of the class and the inci-

---

1. The hospital has state and federal tax exemptions and is located on lands deeded by the hospital to the county. A member of the county board of commissioners sits on the hospital's board of directors. The hospital has received in excess of $500,000 in Hill-Burton funds and has an annual contract with the U.S. Public Health Service for reimbursement for services provided to Indians.

dents of discrimination against Navajos. Following oral arguments the court in a ruling from the bench denied the preliminary injunction as well as the prayer for declaratory relief and permanent injunction.

Reversal is sought on the following grounds:

First, that the court abused its discretion in denying the plaintiffs' application for a preliminary injunction.

Second, the court erred in dismissing the plaintiffs' demand for a permanent injunction.

Third, the court erred in denying the application for a class action.

The findings of fact and conclusions of law which were submitted by defendant were adopted by the court. These findings stated that plaintiff had failed to prove that there existed a policy in the defendant hospital to refuse emergency room treatment for hospital admissions to persons of Indian descent, either Navajo Indians or medically indigent Navajo Indians. An additional finding pronounced that the issue presented and the evidence heard were the same as those which were to be considered by the court in connection with a permanent injunction; that this was true of the failure of the plaintiffs to prove that there existed a policy of conspiracy against plaintiffs, whereby temporary injunctive relief would be inappropriate resulted also in their not being entitled to permanent injunctive relief. Still a further finding was made that the plaintiffs were not representative of the class of persons asserted in the complaint nor typical of the class asserted to exist by plaintiffs. The court proceeded to deny the temporary injunction, to dismiss the cause of actions relating to permanent injunction and, further, it denied the request that the cause proceed as a class action.

The court did not refer to the specific evidence which it relied on in connection with its findings and conclusions.

The definitive issue considered was whether there existed a policy or practice at the times in question on the part of the hospital to exclude from emergency treatment Indians or Indians of Navajo origin, by systematically referring these people to the Shiprock Public Health Service Hospital and by refusing to give them emergency treatment and emergency examination.

Plaintiff-appellants refer to the evidence that the Board of Directors of the hospital actually voted on January 21, 1974, that Navajo persons in non-life endangering conditions seeking emergency room treatment were not to be received but were to be sent to Shiprock Public Health Service Hospital, a distance of 30 miles away. The reason for this policy, according to the minutes, was that it would be cheaper for the hospital to bear the cost of transporting the patients rather than the cost of treating them. Appellants also point to the fact that the minutes of the meetings of the Board of Directors of the hospital disclosed a consistent policy of regarding the Indians as a separate problem to be treated differently from other ethnic groups.

Two physicians from the Shiprock Hospital testified as to some cases which were referred to Shiprock from the San Juan Hospital emergency room. These patients were not given any treatment, notwithstanding that they were emergency cases and at least two of them were testified to be life endangering cases. Also, affidavits were offered signed by physicians at the Public Health Service Hospital at Shiprock stating that patients had been referred who had been given some medical care by the San Juan Hospital, but the transfer had taken place before the condition of the patient or patients had stabilized. One such patient was described as having arrived at Shiprock in cardiac arrest with severe blood loss and without having had blood replaced. This patient died the same day. Three other patients had been sent the same night. One had been seen by the doctor at San Juan and two others had been seen only by the nurse who was on duty in the emergency room.

An affidavit by a Dr. Taylor at the Shiprock Hospital attested to the fact

that a number of patients who had been transferred had not received medical assessment and stabilizing care before the transfer. Other affidavits of patients described similar experiences, that is, refusal of treatment without calling on a doctor to examine them. Finally, they were given treatment after their private physician was called. The log of the Shiprock Public Health Service Hospital revealed that there had been approximately 107 transfers from the San Juan Hospital to Shiprock from July 14, 1974, to the date of the hearing, November 4.

There is one other piece of evidence which is worthy of mention. One witness testified that when he went to the emergency room with a sick child the nurse took the child's temperature, then told him to read a 3 x 5 card stating that Indian patients are urged to go to Shiprock and told him that he had to go there.[2]

## I.

### DID THE COURT ERR IN DENYING THE PRELIMINARY INJUNCTION?

■ The object of the preliminary injunction is to preserve the status quo pending the litigation of the merits. This is quite different from finally determining the cause itself. *See Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (2d Cir. 1953); 11 Wright & Miller, Federal Practice and Procedure, Sec. 2947. The burden is, of course, on the movant to establish his right to such relief. He must do so by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief. *Crowther*

*v. Seaborg,* 415 F.2d 437 (10th Cir. 1969); *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974); 11 Wright & Miller, Federal Practice and Procedure, Sec. 2948. The moving party must also show that irreparable injury will be suffered unless injunctive relief is granted. As already noted, the right to relief must be clear and unequivocal. *Crowther v. Seaborg, supra* ; 7 J. Moore, Federal Practice, par. 65.04(1); 11 Wright & Miller, Federal Practice and Procedure, Sec. 2948.

■ The trial court determined that there had been a failure to prove discrimination or conspiracy or that irreparable injury would result. The judge in denying relief was aware that the grant or denial of preliminary injunction was subject to the trial court's discretion and that the trial court's findings are not to be disturbed on appeal unless they are clearly erroneous or an abuse of discretion. Fed.R.Civ.P. 52(a); *Club Martinique v. United States,* 409 F.2d 841 (10th Cir. 1969); *Crowther v. Seaborg, supra* ; 7 J. Moore, Federal Practice, par. 65.04(2); 11 Wright & Miller, Federal Practice and Procedure, Sec. 2948.

■ We have reviewed the evidence and are of the opinion that this ruling at least does not reveal either plain error or abuse of discretion. To be sure, there was substantial evidence to support a finding that there existed a policy in the San Juan Hospital to transfer Indian patients to the Shiprock Public Health Service Hospital even though such patients needed emergency treatment. Plaintiffs' evidence presented through physicians and others of transfers to Shiprock without adequate medical attention having been given shows this.[3] So,

2. The following notice is that which the plaintiffs' witnesses were directed to read:

TO: EMERGENCY ROOM PERSONNEL
FROM: ADMINISTRATOR
DATE: OCTOBER 16, 1973
If a person comes into the Emergency Room in a non-acute condition, or if one brings in a child suffering from a cold or some "sick call" type ailment, please explain the attached memorandum to them. If they still wish to be taken care of here, explain to

them that they must pay cash. It is important to point out to all Indians that they can go to Shiprock and get the care they need for nothing.

3. Evidence showed that persons seeking emergency care at San Juan Hospital are first seen by a nurse who evaluates the situation and provides first aid or calls the patient's private physician or the doctor on call, if that is warranted. The latter is not always present in the emergency room. Sometimes the nurse's de-

from our vantage point it would appear that there was considerable evidence which could have supported a finding of refusal to give emergency treatment on a discriminatory basis. However, the hospital administrator denied this. He claimed that it was the policy of the hospital to treat all patients regardless of race or ability to pay. Also, one of the physicians testified to some length that there was not a policy of discrimination. At the same time, the witnesses conceded that payment in cash was required of all emergency room patients.[4]

Other evidence of defendant was that in January 1974, 21.2% of all emergency room patients were Indians, and in July 1974, 13.7% of such patients were Indians.[5]

In our opinion, then, the trial court did not abuse its discretion nor commit clear error. There was some evidence (but not an overabundance) to support the denial of the temporary injunction. Plaintiffs did not, however, present all of their case because they did not have reason to realize that their entire case was at stake. They failed to show, for example, that non-Indian patients in non-life threatening situations were treated differently in that they were not informed that they should first seek treatment from a private physician or that the cash payment rule was not applied to non-Indians, so there remained the possibility that all emergency room patients were treated equally badly. As a result, the trial court's findings of fact going to the preliminary injunction were legally suffi-

cient under Rule 52(a) of the Federal Rules of Civil Procedure. The findings need not be set forth in elaborate detail, they only need be "clear, specific, and complete" and inform the reviewing court of the basis for the decision. *Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965); 9 Wright & Miller, Federal Practice and Procedure, Sec. 2579, p. 711.

## II.

## WAS IT ERROR FOR THE TRIAL COURT TO DETERMINE AND DENY RELIEF ON THE PERMANENT INJUNCTION?

■ We take a different view of the part of the judgment which denied the permanent injunction and dismissed the action without consolidating the hearings on the preliminary injunction and class action issues with the permanent injunction, and without providing plaintiffs a chance to present their entire case. The court's action was erroneous in several respects. First, although the Federal Rules of Civil Procedure, Rule 65(a)(2), authorize the consolidation of the preliminary injunction hearing and the permanent injunction hearing,[6] the court failed to follow the rule. It proceeded to dispose of the permanent injunction at the same time it disposed of the temporary injunction and did so without taking any steps to consolidate the two proceedings in accordance with the rule. The result was that the plaintiffs had no notice and opportunity to prepare for the permanent injunction hearing.

---

termination is telephoned to the physician and the transfer is made upon the basis of that telephone call.

4. A notice to the effect was posted in the emergency room. The hospital made exceptions to the cash only rule for persons covered by workmen's compensation, Blue Cross or Utah International.

5. The figures reflect only the persons who came to the emergency room, not those who received treatment.

6. The full text of it is as follows:

    (2) *Consolidation of Hearing with Trial on Merits.* Before or after the commencement

of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

Secondly, the proof on preliminary injunction was not so devoid of merit as to furnish a justification for the court's action. On the contrary, there was substantial evidence.

■ Third, not only is there a requirement of consolidation of the two hearings, the court must also give parties adequate notice that the hearing is going to take this turn. *See Puerto Rican Farm Workers v. Eatmon,* 427 F.2d 210 (5th Cir. 1970);[7] 7 J. Moore, Federal Practice, par. 65.04(4). Professor Moore has stated:

> What is required is that the parties be given a full opportunity to present evidence in the case. At a hearing on application for a temporary injunction it is not necessary to establish to a certainty that the plaintiff is entitled to relief on the merits, but rather that his success is probable. (footnote omitted) A plaintiff putting on his case for temporary relief may hold back evidence, or, indeed, his case may not be fully developed. Thus it is important for him to know that when he puts on his evidence he is having his final "day in court."

7 J. Moore, Federal Practice, par. 65.-04(4), pp. 65–66—65–67.

Absent such notice, the dismissal of the claim for permanent injunction on the basis of evidence developed at the preliminary injunction hearing is recognized by the cases to constitute error. *T.M.T. Trailer Ferry, Inc. v. Union De Tronquistas de Puerto Rico, Local 901,* 453 F.2d 1171 (1st Cir. 1971); *Securities*

*and Exchange Commission v. Pearson,* 426 F.2d 1339 (10th Cir. 1970); *Sooner State Dairies, Inc. v. Townley's Dairy Company,* 406 F.2d 1328 (10th Cir. 1969). In *Sooner,* we pointed out that "only by adherence to the spirit of these rules can we be sure of a full hearing—the essence of due process." *Id.,* at 1329. Even though the issues are similar, the parties are entitled to notice. *Nationwide Amusements, Inc. v. Nattin,* 452 F.2d 651 (5th Cir. 1971).[8]

In the case at bar the trial court not only failed to consolidate the matters, the judge stated several times that the hearing was on a preliminary injunction.

Since the plaintiffs did not present their full case and in all probability were not prepared to do so, having had no notice, their rights were prejudiced as a result of the court's action. If the proof had been grossly inadequate and had not promised to improve, the action taken would be understandable. This, as we have noted, was not the case, and our decision that the trial court was not plainly erroneous in denying the temporary injunction does not reflect a viewpoint on our part that the plaintiffs' evidence was substantially insufficient.

Since, therefore, the court did not consolidate the hearings, failed to give notice that a final hearing was to be held and considering the further fact that plaintiff made a substantial evidentiary showing, we consider the action of the court in dismissing the cause of action to have been plain error and an abuse of discretion.

---

7. In *Eatmon,* the trial court did not notify the parties that the hearing would be on the merits, instead of solely on the preliminary injunction, until after plaintiff had rested his case. The following day, in oral argument before the trial court, plaintiff made an offer of newly discovered evidence, which the trial court refused. The court of appeals reversed the trial court's denial of preliminary and permanent injunctive relief, holding that the plaintiffs were entitled to a full hearing on the merits in the absence of adequate notice of consolidation.

8. Although some courts have held that the dismissal of a claim for permanent injunction without consolidation and notice was proper where the facts are fully developed at the preliminary hearing and where no material issues of fact remain, *Bright v. Nunn,* 448 F.2d 245 (6th Cir. 1971); *Standard Oil Co. of Texas v. Lopeno,* 240 F.2d 504 (5th Cir. 1957) (decided before section (a)(2) was added to Rule 65), such is not the case here. Plaintiffs have not introduced all of their evidence, *see* Denial of Preliminary Injunction, *supra.*

## III.

### DID THE COURT ERR IN DENYING THE APPLICATION TO TREAT THE CASE AS A CLASS ACTION?

■ This proposed class action is not a complex damage suit on behalf of a large number of plaintiffs. It merely seeks protection of a class by injunctive relief against alleged discriminatory practices under Rule 23(b)(2). Thus, there are not difficult notice problems nor does it present administrative complications involved in collecting and distributing funds such as are encountered in Rule 23(b)(3) damage actions.

Rule 23(a), Federal Rules of Civil Procedure, sets forth the elements necessary to a class action. It states that one or more members of a class may sue or be sued as representative parties on behalf of all if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The district court denied the class action request and assigned as its reason that the particular plaintiffs were not typical of the members of the class. Also, doubt was expressed concerning plaintiffs' ability to adequately represent the class. As to Mabel Penn, the court considered her ineligible because she was alleged to have been a low income person, and yet the testimony showed that she had an income of $6,500 per year and that her husband received $400 a month which would add up to a family income of $11,000. The court also considered her ineligible because, as the judge stated it, she was not a typical Navajo Indian since she did not live on the reservation.

The reason Daisy Jones was found not to be typical was: "Daisy doesn't even live in New Mexico, she lives over in Teec Nos Pos, which is in Arizona," and thus was not typical of the class, and she also did not live on the reservation.

The reasons given by the court in support of its rejection of the class action are not persuasive. No dispute exists about both the plaintiffs being Navajo Indians. Nor is there any real dispute as to non-conflict of interests nor as to typicality of the claims asserted, and this is the essence of the requirement of typicality. Subsection (3) demands that the claims or defenses of the representative parties be typical of the claims or defenses of the classes, and the claims of both plaintiffs are from "persons of Navajo Indian descent who live in or near the City of Farmington or frequent that city such that they might be expected to require emergency care at San Juan Hospital."

The fact that Mabel Penn did not appear to be indigent is inconsequential because Mabel Penn did not purport to represent an indigent class. It was Daisy Jones who was the low income plaintiff seeking to represent the sub-class bringing the part of the lawsuit which did rely on indigency, the Internal Revenue Code, Sec. 501(c)(3) claim. Since she sought to represent an indigent class, her indigency is not disqualifying. Also, the fact that Daisy Jones was not a resident of Farmington lacks relevancy. The place of her residence, Teec Nos Pos, Arizona, does not serve to disassociate her from other members because it is located very near to Farmington (within a range of 50 miles), so if it appears that she frequents the City of Farmington and might be expected to require emergency care at San Juan Hospital, she would qualify. In order to represent the class of Indians it is not necessary that there be authorization by the tribe. The plaintiffs do not seek to represent the tribe.[9]

9. The court said:

> The Court is going to find that she is not typical of the class. Now, Daisy Jones doesn't even live in New Mexico. She lives

> over in Teec Nos Pos, I don't know whether I pronounced that right or not, and that's over in Arizona. And I just don't believe that those two are representative of the

According to the evidence of Mabel Penn, she is a Navajo Indian and lives in Farmington. She testified that she visited the defendant hospital's emergency room seeking medical care for herself and her son. She said that she and her son were told to go to the Public Health Service Hospital in Shiprock, New Mexico and that they were refused service by the defendant hospital until she was able to call her private physician and have him intervene on her behalf.

Daisy Jones was shown to have been at the time a medical indigent and is shown also to have been suing on her own behalf and on behalf of her decedent, Mae Neal, who was denied emergency treatment at defendant hospital and was transferred to Shiprock Hospital. Since Daisy Jones is subject to being turned away from the emergency room of the San Juan Hospital should she appear and need emergency treatment, she is a proper class representative. *Cf. Martin v. Thompson Tractor Co.,* 486 F.2d 510 (5th Cir. 1973); 7A Wright & Miller, Federal Practice and Procedure: Civil Sec. 1776.

■ To sum up: the typicality requirement is ordinarily not argued. One commentator has suggested that "typicality" as a requirement for maintaining a class action is superfluous "since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." 3B Moore's Federal Practice Sec. 23.06–2. Another view is that the "typicality" requirement of 23(a)(3) dovetails with the adequacy of representation of 23(a)(4). One may worry about the representative plaintiffs' claims in order to guard against a conflict of interest, whereby the representatives could not "fairly and adequately protect the interests of the class." 23(a)(4). It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory. *See Serna v. Portales Munic. Schools,* 499 F.2d 1147 (10th Cir. 1974); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968); *In re Four Seasons Securities Law Litigation,* 59 F.R.D. 667 (W.D.Okl.1973), *rev'd on other grounds,* 502 F.2d 834 (10th Cir. 1974); Degnan, Forward: Adequacy of Representation in Class Actions, 60 Calif. L.Rev. 705, 716 (1972).

The representative parties here are Navajo Indians who sought care at this hospital and they may need to do so in the future. They are simply trying to prevent future discrimination against Indian people and Navajo Indians based upon their ethnic character. Their legal issues are identical to those which would be raised by other members of the class. All of the plaintiffs will have the same general claims. Conceivably the court dismissed the class action because of what it considered to be a lack of merit in their claims. But for the most part the courts have rejected this as a standard for finding the class action. It is not specifically enumerated in Rule 23(a). *See Wilcox v. Commerce Bank,* 55 F.R.D. 134 (D.Kan.1972), *aff'd,* 474 F.2d 336 (10th Cir. 1973). *See also* 7 Wright and Miller, Federal Practice and Procedure: Civil Sec. 1759.

Should it appear as the case develops that there is some reason for disallowing the class action for failure to satisfy the standards set forth in Rule 23(a), it can always be dismissed, but as of the present there is no reason to refuse the plaintiffs' request to proceed with a class action, for if it appears that defendant hospital has failed to satisfy the Hill-Burton Act, for example, the entire group, the members of the class, would

---

class. I don't think they meet the requirement in the first paragraph of class actions, number four, where it says, the representative parties will fairly and adequately protect the interests of the class.

The court is going to find that they don't adequately protect the interests of the class.

This is all about Navajo Indians, and I have listened all the way through to see if something was going to be said about the tribe, or something, but this isn't—this isn't a—it isn't a cause of action where the Navajo Indians as a class have come in here.

benefit. Since, then, there is no violation that we are able to find of Rule 23(a), and in view of the fact that excessive burdens are not imposed on the court, no reason is apparent for disallowing this as a class action.

Accordingly, the judgments of the district court denying the class action and dismissing the suit for a permanent injunction should be and the same are hereby reversed and the cause is remanded with directions to proceed in accordance with the views expressed herein.