David L. ANTONSON, John A. Halpern, Dudley Ryan, and David M. Larkin, Plaintiffs,

v.

Leon ROBERTSON, John P. Bigger, Burl G. Cott, and Dwayne R. Glancy, Defendants.

Civ. A. No. 88–2567–V.

United States District Court, D. Kansas.

Dec. 5, 1991.

Steven J. Toll, Andrew J. Friedman, Coen, Milstein, Hausfeld & Toll, Washington, D.C., Vance K. Opperman, Richard Lockridge, Alison Eckstein Colton, Opperman, Heins & Paquin, Minneapolis, Minn., for plaintiffs.

Kent E. Whittaker, Hillix, Brewer, Hoffhaus, Timothy J. Feathers, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, Mo., for all defendants, except Dwayne R. Glancy.

John R. Cleary, Husch & Eppenberger, Michael D. Strohbehn, Walters, Bender & Strobehn, Kansas City, Mo., for Dwayne R. Glancy.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

This case is now before the court on plaintiffs' motion for class certification (Doc. 13) and plaintiffs' renewed motion for class certification (Doc. 86). The parties have conducted discovery on the issues relevant to class certification, including deposing the class representatives. Defendants have responded and oppose the motions. For the reasons stated below, plaintiffs' motions for class certification (Docs. 13 and 86) are granted in part and denied in part.

Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiffs seek to represent as class representatives all persons or entities who purchased shares of the common stock of American Carrier, Inc., ("ACI") during the period of June 26, 1987, through August 16, 1988 (the "class period"). Plaintiffs' claims in Count I of plaintiffs' amended

complaint arise under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder by the Securities and Exchange Commission (the "SEC"). Plaintiffs have also brought pendent state law claims of negligent misrepresentation (Count II), common law fraud (Count III), and breach of fiduciary duty (Count IV). All of the named defendants were officers and/or directors of ACI during the class period.

## I. FACTUAL BACKGROUND

ACI common stock was traded in the over-the-counter market and was listed on NASDAQ.[1] On June 26, 1987, the beginning date of the proposed class period, ACI announced that it had executed definitive agreements for the acquisition of Smith's Transfer Corporation, allegedly claiming that the acquisition would make ACI one of the five largest motor carrier operations in the country. On August 16, 1988, the closing date of the proposed class period, ACI announced that it was filing for Chapter 11 bankruptcy protection for one of its principal operating subsidiaries as well as another subsidiary and ceasing operation of those subsidiaries. This announcement allegedly caused the price of ACI stock to fall from $5¼ per share on August 15, 1988, to $1½ per share on August 17, 1988. An involuntary petition for bankruptcy was filed against ACI on October 3, 1988, and ACI was ordered into bankruptcy on December 28, 1988.

Plaintiff David L. Antonson purchased 700 shares of ACI common stock at $5¾ per share on April 27, 1988, and sold his shares on December 28, 1988, at $1¹⁄₃₂ per share. Plaintiff David Larkin made five separate purchases of ACI stock during the class period at between $10 per share and $4½ per share. He also made another purchase of ACI stock after the close of the class period at $1⁹⁄₁₆ per share. Plaintiff

Larkin continues to hold his ACI stock. Plaintiff John A. Halpern purchased a total of 3,000 ACI shares during the proposed class period at prices between $6¼ and $3½ per share. He sold all of his shares after the close of the class period at $1⁵⁄₁₆ per share. Plaintiff Dudley Ryan made three separate purchases of ACI stock during the class period at prices between $5⅝ and $6¼ per share. He sold all of his ACI stock at $1¹³⁄₁₆ per share after the close of the class period.

Briefly, plaintiffs allege that the defendant officers and directors filed and disseminated false and misleading SEC filings, including false and misleading annual and quarterly reports, and that defendants issued materially false and misleading information to the investing public.[2] Plaintiffs contend that these acts and/or omissions caused the market price of ACI common stock to be artificially inflated throughout the class period. Plaintiffs allege that they and members of the potential class relied to their detriment on the financial and other statements made, and/or on the integrity of the market in purchasing ACI common stock at artificially inflated prices and that they suffered damages as a result of the material decline in price of ACI common stock upon public disclosure of the information which had allegedly been misrepresented or concealed.

## II. DISCUSSION

For certification as a class action, an action must meet the four-prong test of Fed.R.Civ.P. 23(a), and fulfill the requirements of at least one subsection of Rule 23(b). *See, e.g., Esplin v. Hirschi*, 402 F.2d 94, 98 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties

---

**1.** NASDAQ is an acronym for the National Association of Securities Dealers Automated Quotations and is a computerized quotations system operated by the National Association of Securities Dealers ("NASD").

**2.** The specific alleged misrepresentations and omissions which form the basis of plaintiffs' claims are set forth in plaintiffs' amended complaint (Doc. 26) and are summarized in plaintiffs' brief in support of their motion for class certification (Doc. 14 at pp. 3–5).

on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four prerequisites of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. As stated above, the second requirement for certification is that the action fulfills the prerequisites of one subsection of Rule 23(b). In this case, plaintiffs assert a class action is maintainable under Rule 23(b)(3) which provides:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants primarily contest the typicality of the named representatives' claims and assert that their claims are subject to unique defenses such that common issues of fact or law do not predominate over individual questions and preclude certification of a class action.

## A. Numerosity

■ The court finds that the requirement of numerosity under Rule 23(a)(1) is easily met in this case. As represented by the plaintiffs, ACI had 7,671,510 shares of outstanding common stock as of July 2, 1988, and over 10,000 shareholders shortly before the end of the class period. Although the class period will be limited to persons and entities who purchased shares during the class period,[3] it is clear that "the number of members in the putative class makes their joinder impracticable, if not impossible." *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1278 (D.Kan. 1985).

Moreover, some courts have presumed that the numerosity requirement is satisfied in a securities fraud suit involving nationally traded stock such as ACI. *See Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1401 (D.Conn.1988) ("[i]n securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period") (citations omitted); *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1039 (5th Cir.1981) ("the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities").

## B. Commonality and Typicality

■ Rule 23(a)(2) requires that there be questions of law or fact common to all members of the class and that such common questions predominate over individual questions. In determining whether common questions exist and predominate, either common questions of law or fact presented by the class will be deemed sufficient. *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983).

■ Closely related to the requirement of commonality is the requirement that the claims of the named class representatives be typical of those of the class under Rule 23(a)(3). Specifically, the "class represent-

---

**3.** The court notes that precise enumeration or identity of the class members is not required on a motion for class certification for the class action to proceed. *Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 192 (S.D.N.Y.1986); *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984); *see also Seiffer v. Topsy's International, Inc.,* 64 F.R.D. 714, 717 (D.Kan.1974).

ative must be a class member, must have no interest antagonistic to those of the class, and must have suffered the same injury as the other class members." *Grossman,* 100 F.R.D. at 788 (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Thus, if a named representative has a unique claim or is subject to a unique defense then the requirement of typicality is not met. If a named representative's claim is not typical, then the focus of the trial will most likely be on individual questions which may then predominate over common questions of law and fact. Typicality also insures that the claims of the class representatives resemble the class' claims to an extent that adequate representation can be expected and conflict of interest can be avoided. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir.1975).

■ Nonetheless, claims may be typical without being identical such that "typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *In re Four Seasons Securities Laws Litigation,* 59 F.R.D. 667, 681 (W.D.Okla.1973), *rev'd on other grounds,* 502 F.2d 834 (10th Cir.1974) (citation omitted).

■ As the Tenth Circuit observed in *Penn, supra,* class certification is appropriate under the typicality standard despite varying fact situations among individual class members, "so long as the claims of the plaintiffs and the other class members are based on the same legal and remedial theory." *Penn,* 528 F.2d at 1189 (citations omitted). The named plaintiffs' position need not be identical to every member of a proposed class to satisfy the typicality standard of Rule 23(a)(3). *Aguinaga,* 602 F.Supp. at 1279; *In re Four Seasons,* 59 F.R.D. at 681.

1. Federal Securities Law Claims

■ In this case, plaintiffs have alleged that a series of misrepresentations and

omissions caused the price of ACI stock to be artificially inflated and induced plaintiffs to purchase stock at this artificially inflated price. The court finds that common questions of law and fact as to the alleged misrepresentations and omissions predominate over individual questions on those elements of plaintiffs' federal securities claims. As stated by the Ninth Circuit:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad lines actionable ... and that the issue may profitably be tried in one suit.

*Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (citations omitted).

■ However, defendants argue that individual questions of reliance predominate and that the named representatives are subject to other unique defenses, so that the requirements of commonality and typicality are not met. Traditionally, in order to maintain a Rule 10b–5 action, plaintiff must prove actual reliance on the defendant's deception. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988). Reliance is thus the causal nexus between the defendant's conduct and the plaintiff's injury. *T.J. Raney & Sons, Inc. v. Ft. Cobb, Oklahoma Irrig. Fuel Authority,* 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984).

■ Under the fraud on the market theory, a plaintiff is allowed to rely on the integrity of the market rather than proving direct reliance on the defendant's conduct. *See Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982); *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en

banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). As stated by the Tenth Circuit:

The theory is grounded on the assumption that the market price reflects all known material information. Material misinformation will theoretically cause the artificial inflation or deflation of the stock price. At its simplest the theory requires only that a plaintiff prove purchase of a security and that a material misrepresentation was made concerning the security by the defendant which resulted in an artificial change in price.

The majority of cases which accept some form of fraud on the market theory have concerned securities traded on impersonal, actively traded markets.

*T.J. Raney & Sons, Inc.,* 717 F.2d at 1332 (citations omitted). Thus, if plaintiffs in this case are allowed to proceed under a fraud on the market theory, proof of individual reliance on defendants' conduct would not be required. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Lerner v. Haimsohn,* 126 F.R.D. 64, 67 (D.Colo. 1989). Consequently, individual questions of reliance would not predominate and class certification would be appropriate.

■ Defendants object to the application of the fraud on the market theory and argue that the theory does not apply because the market for ACI stock was not efficient. Whether the market for ACI stock was efficient is a question which goes directly to the merits of plaintiffs' case and may not be decided at the class certification stage. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2143, 40 L.Ed.2d 732 (1974) (no inquiry may be made into merits of case at class certification stage); *Kirkpatrick,* 827 F.2d at 722

(trial court's rejection of fraud on the market theory due to lack of evidentiary support was inappropriate inquiry into merits of action); *Garfinkel,* 695 F.Supp. at 1403 (defendant's assertion that market not efficient goes directly to merits).

■ Without deciding whether the market for ACI stock was efficient, the court observes that there is evidence in this case which would tend to support this conclusion.[4] The court concludes that the efficiency of the market of ACI stock is a common question to be decided at trial and that the asserted lack of market integrity does not prevent class certification of plaintiffs' federal securities claims.

■ Defendants also assert that the named representatives are subject to the "unique" defense that they did not rely on the integrity of the market in electing to purchase ACI stock. Rather, the named plaintiffs purportedly relied on their brokers' advice in purchasing the stock. Defendants therefore assert that the claims of the named plaintiffs are not typical of the class members' claims and, hence, that the named plaintiffs are not adequate class representatives.

Under the fraud on the market theory, defendants still have available the affirmative defense that the plaintiffs did not rely on the integrity of the market. *See Gavron v. Blinder Robinson & Co.,* 115 F.R.D. 318, 323–24 (E.D.Pa.1987). However, named plaintiffs need not prove "reliance on the integrity of the market to the exclusion of all other factors." *Kirkpatrick,* 827 F.2d at 723. The court believes that it is virtually impossible to find a stock transaction that does not involve communication with a stockbroker. Thus, if reliance on one's broker constitutes a valid defense, the court concludes that it is not a "unique" defense, as it may well apply to each class member. *See Goldwater v. Al-*

---

4. For example, there is evidence that ACI stock was actively traded on an open market and that the price of the stock responded quickly to unexpected corporate events such as the announcement by ACI that it was filing for Chapter 11 bankruptcy protection for two of its subsidiaries.

Defendants also argue that the market for ACI stock lacked integrity as a result of Baytree Investor, Inc.'s tender offer in January of 1988. However, the court finds that the apparent swift reaction of the price of the stock to Baytree's tender offer would tend to support a finding that the market for ACI stock was efficient.

*ston & Bird,* 116 F.R.D. 342, 352 (S.D.Ill. 1987); *see also Grace v. Perception Technology Corp.,* 128 F.R.D. 165, 168 (D.Mass. 1989) (reliance on the advice of stockbrokers and friends will not destroy typicality).

Defendants also argue that the named plaintiffs relied on information "wholly extraneous" to the market in deciding to purchase ACI stock. This argument is based on conversations and contacts that some of the named plaintiffs' brokers had with representatives of ACI. The court finds that the information obtained by the brokers in question simply does not rise to the level of significant inside information or unique information not generally available in the marketplace which would prevent class certification. *See, e.g., Markewich v. Ersek,* 98 F.R.D. 9, 10–11 (S.D.N.Y.1982); *Grace,* 128 F.R.D. at 169.

Finally, defendants allege that two of the class representatives are not typical since they purportedly engaged in the investment strategy of "dollar averaging" by purchasing shares of ACI stock after the close of the class period. However, the court concludes that purchasing stock subsequent to a material disclosure by a corporation is a common investment technique used to decrease the average cost of the investment. *See Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 53 n. 4 (S.D.N.Y.1984). This issue goes to the question of damages and does not render the claims of the named representatives atypical. In sum, the court finds that, as to plaintiffs' federal securities claims, the requirements of commonality and typicality have been met.

### 2. Pendent State Law Claims

The court denies certification of plaintiffs' pendent state law claims. The court applies Kansas choice of law rules to determine which state law applies to plaintiffs' pendent state law claims of negligent misrepresentation, fraud, and breach of fiduciary duty. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Loveridge v. Dreagoux,* 678 F.2d 870, 877 (10th Cir.1982)

("[d]espite the fact that federal jurisdiction is not based on diversity in this case ..., the same conflicts doctrine applies in a federal question case such as this ..."). In tort actions, Kansas applies the substantive law of the "place of the wrong." *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731 (1985). In most tort cases, the place of the wrong is the place where the injury occurred.

In this case, the law of the state in which each class member received the allegedly fraudulent misrepresentations or purchased shares of ACI stock will be applicable to that class member's negligent misrepresentation and common law fraud claims. *See Seitter v. Schoenfeld,* 678 F.Supp. 831, 836 (D.Kan.1988) (holding that the law of the place where the "effects" of a negligent misrepresentation are felt should control); *Kalamazoo Mfg. Co. v. Anderson,* 712 F.Supp. 854, 859 (D.Kan. 1989) (holding that "in fraud cases, ' "the place of wrong is where the loss is sustained, not where the fraudulent representations are made" ' ") (citations omitted).

Plaintiffs argue that Kansas law should be applied to this case. However, the court is not convinced that Kansas has "sufficient substantive contacts" to the claims asserted by each class member such that the choice of Kansas law is not arbitrary or unfair. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–22, 105 S.Ct. 2965, 2979–80, 86 L.Ed.2d 628 (1985). For example, there is no indication that, in purchasing stock of a publicly-traded corporation with its principal place of business in Kansas, ACI shareholders intended or expected to be bound by Kansas law. The court concludes, therefore, that common questions of law do not predominate as to plaintiffs' negligent misrepresentation (Count II) and fraud (Count III) claims. Moreover, with respect to plaintiffs' common law fraud claims, in the absence of an analogous state law doctrine of fraud on the market, each individual plaintiff would be required to prove his or her individual reliance, causing individual questions of fact to predominate in the case. Therefore,

Counts II and III of plaintiffs' amended complaint are not certified as a class action.

■ Similarly, without passing on the merits of plaintiffs' breach of fiduciary claim (Count IV), the court concludes that individual question of law will predominate. Plaintiffs have alleged that the defendants owed a fiduciary duty to each person who purchased ACI stock and that each person suffered damages in connection with their purchase of ACI stock. Under the choice of law analysis above, the injury resulting from defendants' alleged breach of fiduciary duty would occur where each class member purchased their ACI stock. Thus, the law of each of those states would apply to plaintiffs' breach of fiduciary duty claims and the requirement of commonality is not met as to Count IV of plaintiffs' amended complaint.

### C. Adequacy of Representation

■ Under Rule 23(a)(4) plaintiffs must "fairly and adequately protect the interests of the class." Adequacy of representation is measured by two factors: (1) the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiffs must not have interests antagonistic to those of the class. *See Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 676 (D.Kan.1989); *Aguinaga*, 602 F.Supp. at 1279. The court finds that plaintiffs' counsel will provide fair and adequate representation of the class and that, as discussed above, there is no conflict of interest between plaintiffs and the other members of the proposed class as to Count I of plaintiffs' complaint.

### D. Predominance of Common Questions

■ Rule 23(b)(3) permits a class action to be maintained when questions of law and fact common to the class members predominate those questions which affect only individual class members and when a class action is a superior method of trying the case. As stated before in connection with the commonality requirement of Rule 23(a)(2), common questions predominate in

plaintiffs' federal claims, but not in their pendent state law claims.

As for the superiority of a class action under Rule 23(b)(3) for plaintiffs' federal securities fraud claims (Count I), courts have held that:

> Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.' *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). We stated further, '[T]he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action.' *Id.* (quoting [*Esplin, supra*, at 101]). As the Second Circuit has noted, 'a class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to instigate litigation solely on his own behalf.' *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

*Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). The court concludes that class certification of plaintiffs' section 10(b) and Rule 10b–5 claims is a superior method of trying those claims and that the requirements of Rule 23(b)(3) are met in this case.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiffs' motions for class certification (Docs. 13 and 86) are granted as to Count I of plaintiffs' complaint and denied as to Counts II, III, and IV of plaintiffs' complaint. Plaintiffs' section 10(b) and Rule 10b–5 claims are certified as a class action. Plaintiffs' pendent state law claims are not certified as a class action.

IT IS FURTHER ORDERED that as to plaintiffs' section 10(b) and Rule 10b–5

claims, a class action is certified and members of the class shall be as follows: all persons or entities who purchased shares of the common stock of American Carrier, Inc., during the period of June 26, 1987, through August 16, 1988.

Copies of this order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.